**Edwin J. LIS, Jr., Debbie T. Lis, and Jason Lis, infant, by his father, Edwin J. Lis, Jr., Appellants,**

v.

**The ROBERT PACKER HOSPITAL, Guthrie Clinic, Ltd., Dr. Wayne H. Allen.**

No. 77–2114.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) April 26, 1978.

Decided June 23, 1978.

As Amended Aug 8, 1978.

---

**27.** As the United States has indicated, the applicable legislative history is not to the contrary.

Michael J. DeSisti, David B. Keeffe, De-Sisti & Keeffe, Sayre, Pa., and Benjamin J. Bucko, Groton, N. Y., for appellants.

Joseph A. Quinn, Jr., Joseph J. Heston, Hourigan, Kluger & Spohrer Associates, Wilkes-Barre, Pa., for appellees.

Before SEITZ, Chief Judge and ALDI-SERT, Circuit Judge, and STERN, District Judge.*

OPINION OF THE COURT

ALDISERT, Circuit Judge.

The major questions presented in this appeal from an adverse jury verdict in a medical malpractice diversity case concern practices routinely followed by the district judge in his conduct of trials. While we hold that these practices, which relate to cross examination and bifurcation of trial,

* Honorable Herbert J. Stern, of the United States District Court for the District of New Jersey, sitting by designation.

offend the Federal Rules of Evidence and Civil Procedure and by this opinion explicitly discourage their future use, we do not find reversible error in this case.

## I.

Jason Lis was born to appellants Debbie and Edwin Lis on May 18, 1974, at the defendant Robert Packer Hospital in Sayre, Pennsylvania. Dr. John Pacanowski, the infant's pediatrician, is an employee of the defendant Guthrie Clinic, a professional corporation of some 65 physicians who have privileges at the hospital.

On September 19, 1974, at the age of four months, Jason was taken to the hospital's emergency room with breathing difficulties following an episode of possible aspiration of food. He was examined by the defendant Wayne H. Allen, M.D., also a Guthrie employee, who was serving as the hospital's duty physician. Blood work performed at the time of admission revealed an exceptionally high blood sugar level of 367; a normal reading would have been in the 100–120 range. Dr. Allen made a tentative diagnosis of diabetes mellitus with diabetic acidosis and injected 15 units of regular insulin.

Dr. Allen's diagnosis was subsequently proven erroneous; Jason Lis is not diabetic. Shortly after the incorrect diagnosis and insulin injection, Jason began undergoing serious seizures which continued throughout his hospitalization. The child now suffers from severe brain damage and mental retardation, and probably from blindness. A claim was filed against the hospital, the clinic and Dr. Allen.

The trial court, as was its stated general practice, ordered that the case first go to the jury on the issue of negligence. No evidence of damages was permitted. The defense presented nine expert medical witnesses testifying that the seizures experienced by the child and the subsequent serious permanent malfunctions were not the result of the insulin injection but the result of a pre-existing congenital brain disorder. The jury found Dr. Allen to have been negligent, but that his negligence was not the proximate cause of Jason's condition.

Appellants contend that the court erred (1) in permitting cross examination of Dr. Pacanowski, one of their own witnesses, beyond the scope of direct examination; (2) in bifurcating the liability and damages aspects of the trial; (3) in excluding certain evidence; and (4) in interrupting the summation of plaintiffs' attorney to allow defense counsel time to consider whether to move for a mistrial on the basis of improper remarks in plaintiffs' closing argument. We will discuss only the first two assignments of error.[1]

## II.

Appellants presented Dr. Pacanowski's testimony to describe their son's normal development during early pediatric care, his condition at the onset of seizure activity, and other details of Jason's stay at the hospital. Early in the cross examination, in response to an objection by plaintiffs' counsel that the cross examination was exceeding the scope of direct examination, the court stated:

I did rule, and this will be good for the whole trial—we will permit inquiry in this case into matters beyond the scope of the direct on cross examination as if it were on direct, and we will also permit that for purposes of credibility, too.

Appendix at A–61. Shortly thereafter the court added:

I have the right to permit inquiry beyond the scope of the direct, and I do it in every case unless it causes confusion. I don't see that it is causing any confusion here, and I have the right to control how the evidence is going to be presented. I think myself it is absurd to call a witness two or three times in a trial, call him on one side and then call him by the other side. I think the thing to do is get all the

---

1. We have concluded that arguments (3) and (4) do not present reasons for reversal and do not require discussion.

evidence when he is on the stand. You are not bound by his testimony as far as that goes. Nobody is.

*Id.* at A–62. It is not disputed that the cross examination exceeded the scope of the direct examination, albeit in this portion of the examination defense counsel were precluded from using leading questions.

### A.

Appellants allege that the trial judge's statement, "I have the right to permit inquiry beyond the scope of direct examination and I do it in every case unless it causes confusion", runs a collision course with Federal Rule of Evidence 611(b):

(b) *Scope of cross-examination.* Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

The rule as adopted by Congress changed the rule submitted to it by the Supreme Court. As submitted, Rule 611(b) provided:

A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. In the interests of justice, the judge may limit cross-examination with respect to matters not testified to on direct examination.[2]

The House of Representatives adopted the present language, the Committee on the Judiciary offering this rationale:

The Committee amended this provision to return to the rule which prevails in the federal courts and thirty-nine State juris-

dictions. As amended, the Rule is in the text of the 1969 Advisory Committee draft. It limits cross-examination to credibility and to matters testified to on direct examination, unless the judge permits more, in which event the cross-examiner must proceed as if on direct examination. This traditional rule facilitates orderly presentation by each party at trial. Further, in light of existing discovery procedures, there appears to be no need to abandon the traditional rule.[3]

The Senate Committee stated similar views:

The House narrowed the Rule to the more traditional practice of limiting cross-examination to the subject matter of direct examination (and credibility), but with discretion in the judge to permit inquiry into additional matters in situations where that would aid in the development of the evidence or otherwise facilitate the conduct of the trial.

The committee agrees with the House amendment. Although there are good arguments in support of broad cross-examination from prospectives of developing all relevant evidence, we believe the factors of insuring an orderly and predictable development of the evidence weigh in favor of the narrower rule, especially when discretion is given to the trial judge to permit inquiry into additional matters. The committee expressly approves this discretion and believes it will permit sufficient flexibility allowing a broader scope of cross-examination whenever appropriate.[4]

Clearly then, the Rule in its present form establishes a predictable[5] and orderly

---

**2.** H.R.Rep.No. 650, 93d Cong., 1st Sess. (1973), *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 7051, 7075, 7085, *and* S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 369 (2d Ed.).

**3.** H.R.Rep.No. 650, 93d Cong., 1st Sess. (1973), *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 7075, 7085–86, *and* Saltzburg & Redden, *supra,* at 369.

**4.** S.Rep. No. 1277, 93d Cong., 2d Sess. (1974), *reprinted in* U.S.Code Cong. & Admin.News, pp. 7051, 7071, *and* Saltzburg & Redden, *supra,* at 369–70.

**5.** We are reminded of Oliver Wendell Holmes' well-known phrase that "[t]he prophecies of what the courts will do in fact, and nothing more, is what I mean by the law." Holmes, *The Path of the Law,* 10 Harv.L.Rev. 457, 460–61 (1897). Holmes, of course, was referring generally to areas of law broader than those relating to the conduct of trials, but the import of his statement remains: the most meaningful system will be one which is sufficiently predictable that lawyers and litigants might make informed decisions as to trial strategy.

procedure for the presentation of the various sides to a dispute. The first sentence of the Rule declares that "[c]ross examination should be limited to the subject matter of the direct examination". The second sentence, affording courts the power to expand the inquiry, clearly contemplates special circumstances.

We agree with appellants that, notwithstanding the trial court's laudable motives, its ruling effectuated neither the letter nor the spirit of Rule 611(b). Simply stated, the Rule does not confer upon a federal judge "the right to permit inquiry beyond the scope of the direct . . . in every case". Rather, the general prescription is precisely the opposite. Any right to counter the stated procedure is granted to the trial court only "in the exercise of discretion". To follow the practice announced by the trial judge in this case is not to exercise discretion; it is to use no discretion whatever.

### B.

■ We are careful to distinguish between cross examination beyond the scope of direct examination and the act of summoning a witness for one side to become a witness for the other. The latter also occurred in this case, and appellants have assigned as error the district court's decision to permit the defense to qualify Dr. Pacanowski as their witness at the conclusion of their cross examination. Fed.R. Evid. 611(a) provides:

> (a) *Control by court.* The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

We find no error here. This ruling was discretionary with the trial court, and as long as the defendants were properly limited to direct questions and the plaintiffs were afforded the opportunity to cross examine, as they were, there was neither error nor departure from the Rules in this respect.

■ Trial courts in this circuit traditionally have accommodated the schedules of expert witnesses. It would exalt form over substance to require a physician to return to a courtroom at a later date, once he has already appeared for one party. Thus, although calling a defense witness out of turn for reception of his testimony during the plaintiff's case in chief may technically disrupt the normal presentation of the case, this decision is committed to the discretion of the trial court. If convinced that practical reasons justify calling a witness out of turn and that the testimony will not produce undue confusion in the minds of the jurors, experienced trial courts will permit the practice. If it is the product of an informed discretion, the decision will not be disturbed.

### III.

Appellants' second argument involves a challenge to another "general practice" of the trial judge. Faced with an objection to his decision to bifurcate the trial and limit the first phase to liability only, the court responded:

> I bifurcated it because we bifurcate all negligence cases, and I think everybody is more fairly treated that way.

Appendix at A–30.

Appellants argue that this general practice of bifurcation flies in the face of Fed.R. Civ.P. 42(b):

> (b) *Separate Trials.* The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Specifically, appellants contend that the decision to bifurcate a trial must be made only after the trial court, in the exercise of discretion, weighs the various considerations of convenience, prejudice to parties, expedition, and economy of resources. Thus, the question for decision is whether the trial court's practice of bifurcating *all* negligence cases because it believes "everybody is more fairly treated that way" is sufficient to merit a reversal in this case.

■ Although it is reported that some district courts have adopted local rules that encourage separation of liability from damages, *see* Wright and Miller, Federal Practice and Procedure, § 2390, the rule in this circuit since 1972 has been that the decision to bifurcate *vel non* is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance. *Idzojtic v. Pennsylvania Railroad Co.*, 456 F.2d 1228, 1230 (3d Cir. 1971) ("The district court is given broad discretion in reaching its decision whether to separate the issues of liability and damages. 9 Wright & Miller, Federal Practice and Procedure § 2392.")

We are advised that where district courts have adopted a general bifurcation rule, a heated controversy among the commentators and the profession has resulted.[6] Those who favor the trial of liability separate from damages in personal injury actions emphasize the time savings, and also suggest that in theory there should be no difference in the eventual outcome of the case. But an equally impressive argument is advanced that in many cases, especially personal injury negligence cases, the sepa-

ration might affect the outcome of the case.[7] Although cognizant of these competing considerations, this court has heretofore cast its lot with the views expressed by the Advisory Committee that bifurcation "be encouraged where experience has demonstrated its worth", but that "separation of issues for trial is not to be routinely ordered".[8] We adhere to that position. Thus a routine order of bifurcation in all negligence cases is a practice at odds with our requirement that discretion be exercised and seems to run counter to the intention of the rule drafters.

Accordingly, notwithstanding the sincere and conscientious efforts of this distinguished trial judge to institute a set procedure for all cases, we disapprove of a general practice of bifurcating all negligence cases. Because our previous decision in *Idzojtic, supra,* was a per curiam opinion and contains a passage that diluted the clarity of our holding,[9] we wish to reemphasize our view. A general policy of a district judge bifurcating all negligence cases offends the philosophy that a decision must be made by a trial judge only as a result of an informed exercise of discretion on the merits of each case.

### IV.

■ Nevertheless, although the trial court apparently failed to exercise discretion in applying Fed.R.Evid. 611(b) and Fed.R.Civ.P. 42(b), we do not reverse in this case because appellants have not persuaded us that they were visited with such prejudice as to entitle them to a new trial. Be-

---

**6.** See references collected in Wright and Miller, *supra,* § 2390 nn.53 and 54.

**7.** It can reasonably be suspected that the degree of negligence, the contributory negligence of the plaintiff, and other conduct of the parties are presently reflected, with many juries, in the finding of damages as well as the finding of liability. To a purist it probably would seem desirable to put an end to this, but it may be argued that this lends a beneficial flexibility to the strict rules of liability and contributory negligence. At least it should be recognized that separate trials of liability and damages would differ from a single trial in more than form.

Note, *Separate Trial of a Claim or Issue in Modern Pleading: Rule 42(b) of the Federal Rules of Civil Procedure,* 39 Minn.L.Rev. 743, 760–61 (1955).

**8.** Advisory Committee's Note to the 1966 Amendment of Rule 42(b), 39 F.R.D. 113.

**9.** Although the decision of the case announced the rule of discretion, there was reference to an experimental practice to be followed in the Western District of Pennsylvania without a specific criticism of it. *See* 456 F.2d at 1229.

cause of the dearth of case law construing Rule 611(b) in this court, we hesitate to invoke the draconian remedy of a new trial simply because the trial court followed a certain practice in all cases. For the future, however, it may be that a showing of prejudice will not be necessary to obtain relief from this court where, as here, it is demonstrated that the trial court has failed to heed the congressional command. Trial courts in this circuit can reasonably assume that in future cases this court will treat the congressional formulation as a prophylactic rule which, if not followed, requires the most severe sanction—irrespective of demonstrably prejudicial effect.

Similarly, with respect to the trial court's failure to use an informed discretion to bifurcate in accordance with Rule 42(b), we have concluded that appellants did not demonstrate prejudice. The serious medical condition of Jason Lis was in fact presented to the jury in the liability phase of the case in the form of cumulative testimony by defense witnesses that the administration of insulin did not significantly contribute to the present condition of the child because of the pre-existing damage to the brain. The rule requiring the exercise of discretion in our circuit, announced in 1972 and reiterated today, is in the nature of a prophylactic rule. By emphasizing it as extensively as we do now, we suggest that in the future a showing of prejudice may not be necessary to justify a new trial if the trial court fails to support the decision to bifurcate with an explication demonstrating its exercise of an informed discretion in the circumstances of the case.

The judgment of the district court will be affirmed.