424 S.E.2d 584

**STATE of West Virginia ex rel. Brenda K. TINSMAN and Douglas P. Tinsman, Petitioners,**

**v.**

**Honorable Donald C. HOTT, Judge of the Circuit Court of Berkeley County, by Designation; Plaza Personnel and Reporting Services, Inc., and Kenneth Graybill.**

**No. 21307.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 1992.

Decided Nov. 12, 1992.

Laura Cotelli, Preiser, Tabor, Linsay & Cotelli, Martinsburg, for petitioners.

Barry Beck, Martin & Seibert, Martinsburg, for respondents Plaza Personnel and Reporting Services, Inc., and Kenneth Graybill.

## PER CURIAM:

Brenda K. Tinsman and Douglas P. Tinsman, her husband, seek to prohibit the Honorable Donald C. Hott, Judge of the Circuit Court of Berkeley County, by designation, from enforcing a pretrial order in their sexual harassment suit against Plaza Personnel and Reporting Services, Inc. (Plaza) and Kenneth Graybill. The pretrial order limits the evidence to the testimony of Mrs. Tinsman's co-workers and requires a separate trial on punitive damages. Because we agree that part of this pre-trial order was an abuse of discretion under criteria established by *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979), we award the writ as moulded.

## I

Mrs. Tinsman was employed by Plaza as its temporary placement division manager from November 2, 1987 until May 12, 1988. Mrs. Tinsman, who was paid on commission, maintains that during her employment Mr. Graybill, Plaza's president and her supervisor, sexually harassed her, engaged in outrageous conduct, used insulting words and failed to pay all of her commissions.[1] Mr. Tinsman's claim is for loss of consortium. Before trial, Plaza and Mr. Graybill requested a separate trial on punitive damages alleging that the evidence justifying punitive damages was

highly prejudicial. Plaza and Mr. Graybill also sought to limit testimony of sexual harassment to that of Mrs. Tinsman's co-workers.[2] After a hearing and over the objections of Mr. and Mrs. Tinsman, Judge Hott limited evidence of liability to the testimony of Mrs. Tinsman's co-workers and ordered a separate trial on punitive damages.

Alleging that the pre-trial order was an abuse of discretion, Mr. and Mrs. Tinsman petitioned this Court for a writ of prohibition. Mr. and Mrs. Tinsman want to introduce testimony from Mr. Graybill's former wife that he sexually harassed other female employees in 1983–84. Mr. and Mrs. Tinsman also want a court reporter to testify that Mr. Graybill failed to pay her proper commission pursuant to an unrelated employment contract. Finally, Mr. and Mrs. Tinsman maintain that a separate trial on punitive damages is superfluous because the substantiation of their claims of sexual harassment, outrageous conduct and the use of insulting words, also justifies the award of punitive damages.

## II

Mr. and Mrs. Tinsman's first assignment of error concerns the exclusion of certain testimony, which they contend is designed to show that Mr. Graybill created a hostile work environment, engaged in patterns and practices that sexually harassed his employees and engaged in an intentional plan to deprive employees of earned commissions. Specifically, the Tinsmans want Mr. Graybill's former wife to testify about alleged incidents of sexual harassment that occurred in 1983–84 and a court reporter to testify that Mr. Graybill, pursuant to an unrelated employment contract, failed to pay proper commissions. The circuit court's pre-trial order did not permit the

---

**1.** See *Hutson v. Henry*, 184 W.Va. 692, 403 S.E.2d 435 (1991), rejecting the consolidation of Mrs. Tinsman's case with a sexual harassment and wage dispute action brought by another former employee of Plaza.

**2.** According to Mrs. Tinsman's petition the pretrial order "preclude[d] Brenda Tinsman from introducing evidence of prior and ongoing sexual harassment of employees on the part of De-

fendant Graybill...." However, the pretrial order stated that "the Plaintiffs shall not be permitted to introduce in their case-in-chief any evidence that the Defendant Kenneth Graybill allegedly sexually harassed other female employees who worked with him prior to the Plaintiff's employment with Defendant Plaza...."

Tinsmans to introduce evidence that Mr. Graybill had "allegedly sexually harassed other female employees who worked with him prior to the Plaintiff's employment with Defendant Plaza" and that Mr. Graybill had failed to pay a court reporter commission pursuant to an unrelated employment contract.

We have long held that " '[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, 171 W.Va. 639, 643, 301 S.E.2d 596, 599 (1983); Syllabus Point 2, *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983)" Syllabus Point 9, *TXO Production Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 419 S.E.2d 870 (1992), *petition for cert. filed*, 61 U.S.L.W. 3206 (Sept. 17, 1992) (No. 92–479). In Syllabus Point 6, *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986), *overruled, in part, on other grounds*, *State v. Edward Charles L., Sr.*, 183 W.Va. 641, 398 S.E.2d 123 (1990), we held that in order to be considered relevant the "collateral crimes must have occurred reasonably close in point of time to the present offense." In *State v. Dolin*, we concluded that "[i]t is impermissible for collateral sexual offenses to be admitted into evidence solely to show a defendant's improper or lustful disposition toward his victim." Syllabus Point 7, *State v. Dolin, id.*[3]

The Supreme Court in *Meritor Saving Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), a sexual harassment case, noted that evidence of the plaintiff's provocative speech and dress was relevant and that "[t]he EEOC Guidelines emphasize that the trier of fact must determine the existence of sexual harassment in light of 'the record as a whole' and 'the totality of circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred.' 29 CFR § 1604.11(b) (1985)." 477 U.S. at 69, 106 S.Ct. at 2406. The Supreme Court then concluded that the district court should determine the "[r]espondent's claim that any marginal relevance of the evidence in question was outweighed by the potential for unfair prejudice...." 477 U.S. at 69, 106 S.Ct. at 2406.

Other jurisdictions that have addressed the question of the proper evidence in a sexual harassment case require the evidence to be contemporaneous and directly related to the alleged incident. When the question of whether incidents of sexual harassment directed at other employees could be used as evidence in the plaintiff's claim of a hostile work environment, the court in *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir.1987), said "[t]he answer seems clear: one of the critical inquiries in a hostile environment claim must be the *environment*. [Emphasis supplied.]" In *Hicks*, the court held that evidence that other employees had been sexually harassed should be considered to determine if a hostile work environment existed. *Hicks*, 833 F.2d at 1416. In *Vinson v. Taylor*, 753 F.2d 141, 146 (D.C.Cir.1985), *aff'd in part and rev'd in part*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the court held:

> [E]vidence tending to show Taylor's harassment of other women working alongside Vinson is directly relevant to the question whether he created an environment violative of Title VII. (Footnote omitted.)

In *Stockett v. Tolin*, 791 F.Supp. 1536, 58 FEP Cases 1441 (S.D.Fla.1992), the court, when considering the defendant's liability, allowed testimony of other female employees and of incidents that were known to or seen by the plaintiff. In *Stockett*, the court considered "acts other than the acts giving rise to the defendant's liability to the plaintiff on the issue of punitive damages." *Id.* 791 F.Supp. at 1557–58. In *Jones v. Flagship Intern.*, 793 F.2d 714, 721 n. 7 (5th Cir.1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987), the evidence was required to "bear on [the plaintiff's] individual claim of sexual harassment...." *See Hall v. Gus Construction Co., Inc.*, 842 F.2d 1010, 1015 (8th Cir.1988) ("evidence of sexual harassment directed at employees other than the

---

**3.** *See infra* Section III for a discussion of the protection provided against unfair prejudice.

plaintiff is relevant to show a hostile work environment"); *Spencer v. General Elec. Co.* 697 F.Supp. 204, 219 (E.D.Vir.1988) (evidence showed "workplace was pervaded by sexual innuendo, sexually-oriented games and intimate touching ...").

In the present case, in order to prove that Mr. Graybill sexually harassed Mrs. Tinsman, evidence of Mrs. Tinsman's work environment is relevant and should be admitted. Although we agree with Mrs. Tinsman that events occurring before her employment could be evidence of a hostile working environment, for these events to be relevant, and therefore admissible, they must have helped to create her work environment. The evidence that the Tinsmans seek to introduce would not show any impact on Mrs. Tinsman's work environment. Mr. Graybill's former wife's testimony would concern events that allegedly occurred four years before Mrs. Tinsman's employment in a different employment agency and in a different state. The court reporter's testimony would concern commissions based on an unrelated employment contract. Based on the record, we find that the circuit judge did not abuse his discretion in refusing to admit testimony from Mr. Graybill's former wife and the court reporter on the issue of liability.[4]

## III

Mrs. Tinsman also maintains that a separate trial on the issue of punitive damages is not justified. Rule 42(c) of the *West Virginia Rules of Civil Procedure* [1978] allows a circuit court to order a separate trial by providing:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserv-

ing inviolate the right of trial by jury as declared by Article III, Section 13 of the West Virginia Constitution or as given by a statute of this State.

The granting of separate trial was within the sound discretion of the trial court. In Syllabus Point 6, *Bennett v. Warner*, 179 W.Va. 742, 372 S.E.2d 920 (1988), we said:

Parties moving for separate trials of issues pursuant to West Virginia Rule of Civil Procedure 42(c), or the court if acting *sua sponte*, must provide sufficient justification to establish for review that informed discretion could have determined that the bifurcation would promote the recognized goals of judicial economy, convenience of the parties, and the avoidance of prejudice, the overriding concern being the provision of a fair and impartial trial to all litigants.

In seeking to prohibit a separate trial on punitive damages, the Tinsmans argue that bifurcation would not serve the goals of judicial economy or convenience of the parties. According to the Tinsmans, no conservation of judicial effort could be achieved because the evidence justifying the claims of sexual harassment, outrageous conduct and insulting words also justify the award of punitive damages. In addition, because the same witnesses would be called in both trials, a separate trial would consume additional court time and the witnesses would be inconvenienced.

Mr. Graybill argues that a separate trial on punitive damages is necessary because to consider punitive damages the jury would hear highly prejudicial information about him and would be encouraged to judge his liability on his ability to pay and his past actions.

Recently in *TXO Production v. Alliance Resources*, 187 W.Va. 457, 468–71, 419 S.E.2d 870, 881–84 (1992), *petition for cert. filed*, 61 U.S.L.W. 3206 (U.S. Sept. 17, 1992) (No. 92–479), we discussed the protection provided against unfair prejudice:

---

**4.** *See supra* n. 2 for the circuit court's pre-trial order allowing the testimony of Mrs. Tinsman's co-workers. Although the pre-trial order's prohibition is broader than necessary, given that

the Tinsmans want to introduce testimony about instances that occurred four years before the alleged harassment, we find that error to be harmless.

Protection against unfair prejudice from evidence admitted under Rule 404(b) of the *West Virginia Rules of Evidence* [1985] is provided by: (1) the requirement of Rule 404(b) that the evidence be offered for a proper purpose; (2) the relevancy requirement of Rule 402—as enforced through Rule 104(b); (3) the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice; and, (4) Rule 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

Syllabus Point 8, *TXO id.* Although a separate trial on punitive damages is not listed in *TXO* as a protection against unfair prejudice, in extraordinary cases when none of the listed protections suffice, a separate trial on punitive damage is justified.

■ In this case, some of the evidence that Mr. Graybill contends is prejudicial supports the Tinsmans' claims and, therefore, will be considered on the issue of liability. However, evidence concerning Mr. Graybill's ability to pay and the prior

sexual harassment charges against him, although not relevant on the issue of liability (*See supra* Part II), are admissible on the issue of punitive damages.[5] In *Garnes v. Fleming Landfill,* 186 W.Va. 656, 413 S.E.2d 897 (1991), we allowed a jury considering punitive damages to hear evidence about a defendant's conduct and ability to pay. Syllabus Point 3, in part, *Garnes* states:

(2) The jury may consider (although the court need not specifically instruct on each element if doing so would be unfairly prejudicial to the defendant), the reprehensibility of the defendant's conduct. The jury should take into account how long the defendant continued in his actions, whether he was aware his actions were causing or were likely to cause harm, whether he attempted to conceal or cover up his actions or the harm caused by them, *whether/how often the defendant engaged in similar conduct in the past,* and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him.

• • •

(5) The financial position of the defendant is relevant. (Emphasis added).[6]

---

5. On the issue of punitive damages, the pre-trial order allows the Tinsmans to introduce evidence that Mr. Graybill sexually harassed employees *who worked for him before* Mrs. Tinsman's employment. However, the pre-trial order did not permit the Tinsmans "to introduce in their case in chief any evidence that Defendant Kenneth Graybill allegedly withheld commissions or had improper business dealings...."

6. In its entirety, Syllabus Point 3, *Garnes, supra* states:

When the trial court instructs the jury on punitive damages, the court should, at a minimum, carefully explain the factors to be considered in awarding punitive damages. These factors are as follows:

(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the defendant's actions caused or would likely cause in a similar situation only slight harm, the damages should be relatively small. If the

harm is grievous, the damages should be greater.

(2) The jury may consider (although the court need not specifically instruct on each element if doing so would be unfairly prejudicial to the defendant), the reprehensibility of the defendant's conduct. The jury should take into account how long the defendant continued in his actions, whether he was aware his actions were causing or were likely to cause harm, whether he attempted to conceal or cover up his actions or the harm caused by them, whether/how often the defendant engaged in similar conduct in the past, and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him.

(3) If the defendant profited from his wrongful conduct, the punitive damages should remove the profit and should be in excess of the profit, so that the award discourages future bad acts by the defendant.

(4) As a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages.

Under *Garnes,* Mr. Graybill's ability to pay and prior similar conduct is relevant on the issue of punitive damages. However, to be considered on the issue of punitive damages, the evidence of similar conduct must be sufficient "to support a finding by the jury that the defendant committed the similar act." *Huddleston v. U.S.,* 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). *See TXO, supra,* 187 W.Va. at 470–71, 419 S.E.2d at 883–84, for an application of the *Huddleston* analysis.

■ Once the similar conduct evidence is admissible under *Huddleston,* we then require the trial judge to weigh its probative value against the danger of unfair prejudice.

"Rules 402 and 403 of the *West Virginia Rules of Evidence* [1985] direct the trial judge to admit relevant evidence, but to exclude evidence whose probative value is substantially outweighed by the danger of unfair prejudice to the defendant." Syllabus Point 4, *Gable v. The Kroger Co.,* 186 W.Va. 62, 410 S.E.2d 701 (1991).

Syllabus Point 10, *TXO* supra.

■ In the present case on the issue of punitive damages, the trial court decided to admit the evidence of Mr. Graybill's ability pay and prior bad acts, but because of the danger of unfair prejudice, a separate trial was ordered. However a separate trial on the issue of punitive damages does not promote the goals of judicial economy and convenience of the parties because most of the allegedly prejudicial evidence will be introduced to prove liability. The only evidence to be introduced exclusively on punitive damages concerns Mr. Graybill's ability to pay and his alleged prior bad acts. Because of the limited evidence admissible on punitive damages, the goal of avoidance of prejudice can be achieved without resorting to a separate trial by using Rule 105 of the *West Virginia Rules of Evidence* [1985], which provides:

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for

another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

*See supra* pp. 588–89 for Syllabus Point 8, *TXO.*

We find that in this case a separate trial on punitive damages is not justified, because the alleged benefit, avoidance of prejudice, can be achieved without sacrificing the goals of judicial economy and convenience of the parties by using Rule 105 to restrict the evidence of Mr. Graybill's ability to pay and prior bad acts to its proper scope and instruct the jury accordingly.

## IV

■ The standard for this Court's use of prohibition when a court is not acting in excess of its jurisdiction was stated in Syllabus Point 1, *Hinkle v. Black, supra,* which stated:

In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

In the present case, because there is no post-trial remedy, such as appeal, that would serve "the overall economy of effort and money among litigants, lawyers and courts" (*Hinkle, id.*), the proper remedy is a writ of prohibition. We find that a rule to show cause in prohibition is justified because by using the limited admissibility provided for in Rule 105 of the *West Virgi-*

---

(5) The financial position of the defendant       is relevant.

*nia Rules of Evidence* [1985], a single trial on both issues can avoid prejudice against the defendant without sacrificing the goals of judicial economy and convenience of the parties.

For the above stated reasons, the writ of prohibition is granted as moulded and the case is remanded for proceedings consistent with this opinion.

Writ granted as moulded.