479 S.E.2d 887

**STATE of West Virginia ex rel. Otis L. CAVENDER and Marguerite Cavender, Petitioners,**

v.

**Honorable Charles E. McCARTY, Judge of the Circuit Court of Roane County, Billy Fouty and Patricia Fouty, Respondents.**

No. 23652.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 1, 1996.

Decided Nov. 18, 1996.

---

George M. Scott, Spencer, for Petitioners.

Charles E. McCarty, Judge, Ripley, Pro Se.

David A. Sims, Debra Tedeschi Hall, Sims and Hall, Elkins, for Respondents.

## PER CURIAM:

In this original proceeding [1] in prohibition, the petitioners, Otis L. Cavender and Marguerite Cavender, challenge a July 12, 1996, ruling of the Circuit Court of Roane County, West Virginia, Pursuant to that ruling, the respondent, the Honorable Charles E. McCarty, granted the motion of Billy Fouty and Patricia Fouty, also named as respondents, to conduct separate trials upon the issues of liability and damages in the underlying personal injury action. That action is styled *Cavender v. Fouty*, Civil Action No. 93–C–123, Roane County. The petitioners contend that the bifurcation of the liability and damage issues, under the circumstances herein set forth, was in contravention of law and, thus, constituted an abuse of discretion.

This Court has before it the petition for a writ of prohibition, the response of the trial judge, the response of the Foutys and all matters of record. For the reasons stated below, this Court grants the relief sought by the Cavenders and orders that the trial judge be prohibited from bifurcating the liability and damage issues.

## I

As the parties indicate, Otis L. Cavender, in August, 1991, offered to buy from Billy Fouty, a used, electrical meter box, and connecting paraphernalia, attached to a pole upon the Foutys' property. Mr. Fouty, an automotive mechanic, had no use for the meter box and sold it to Mr. Cavender for $50. Soon after, Mr. Cavender, using a ladder, attempted to detach the meter box and the paraphernalia from the pole. The pole gave way, and Mr. Cavender fell, sustaining serious injuries. According to the exhibits filed in this proceeding, Mr. Cavender incurred special damages in the range of $60,000 to $70,000.

In June 1993, the Cavenders instituted the underlying action. Thereafter, the Foutys moved for summary judgment, asserting that Mr. Cavender was a mere licensee upon their property when he was injured and that, therefore, they had no duty to protect him from dangers arising on the property from existing conditions. Agreeing with the Foutys, the trial judge granted summary judgment. The summary judgment was appealed, however, and in *Cavender v. Fouty*, 195 W.Va. 94, 464 S.E.2d 736 (1995), this Court reversed and remanded the action for trial.

In *Cavender*, we indicated that the Foutys were correct in asserting that they had no duty to protect a licensee from dangers arising on the property from existing conditions. We also indicated, however, that, under the circumstances, Mr. Cavender could have been an invitee, and, if so, the Foutys had a duty to exercise ordinary care to keep and maintain their property in a reasonably safe condition. In any event, this Court held, in *Cavender*, that Mr. Cavender's status as a licensee or as an invitee was for a jury to determine. 195 W.Va. at 97 n. 2 and 3, 464 S.E.2d at 739 n. 2 and 3.[2]

During the subsequent proceedings below, the Foutys filed a motion pursuant to Rule

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. It should be noted that in addition to the question of whether bifurcation of the underlying action was proper, the petitioners raise an issue concerning the following language in the *Cavender* opinion:

In this case, the question is whether a buyer on a seller's property as part of an isolated commercial transaction, initiated by the buyer, is considered an invitee or a licensee. *Except for a question concerning who proposed the buyer remove the setup*, there appears to be no material question of fact. However, the circuit court erred in reaching the conclusion that the buyer was not an invitee because reaching *any conclusion* requires 'the drawing of legitimate

42(c) of the *West Virginia Rules of Civil Procedure* to bifurcate the issues of liability and damages. The Foutys asserted that bifurcation should be granted because, if the Cavenders failed to establish liability, a substantial amount of time would be saved and the parties could avoid the expense of obtaining expert medical testimony. In addition, the Foutys asserted that, in view of the serious injuries sustained by Mr. Cavender, bifurcation would eliminate any possible prejudice adverse to the Foutys which might otherwise occur during the liability phase of the litigation. On July 12, 1996, the trial judge granted the motion to bifurcate and stated as follows in a letter memorandum of opinion:

> The liability issue in this case should take no more than a day of the Court's time and bifurcation could significantly cut the costs of expert witness fees, attorney fees, *etc.* Once the liability issue is resolved and the need of a trial for damages is determined, the Court can instruct another jury as to the findings of liability and how such damages were sustained by the plaintiff....

> The defendants question the sympathy factor. Would a jury, hearing evidence regarding both liability and damages, be compelled to award damages against the defendants not based upon liability, but sympathy? This concern would be null if the liability issues were presented without the additional evidence of Mr. Cavender's medical problems and pain.

Following that ruling, the petitioners filed the petition for relief in prohibition with this Court. On August 8, 1996, this Court issued a rule directed to the respondents to show cause why relief should not be awarded.

## II

 This is an original proceeding in prohibition. *See W. Va. Const.* art. VIII, § 3; *W. Va. R.App. P.* 14; *W. Va.Code,* 53–1–1 [1931], *et seq.* Rather than asserting that the trial judge was without jurisdiction to grant the motion to bifurcate the issues of liability and damages, the petitioners assert that the trial judge's ruling was in contravention of law and, thus, constituted an abuse of discretion. Accordingly, our analysis in this proceeding begins with syllabus point 1 of *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979), which observes:

> In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among the litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

*See also State ex rel. Amy M. v. Kaufman,* 196 W.Va. 251, 470 S.E.2d 205 (1996); syl. pt.

inferences from the facts,' which is a jury function.
195 W.Va. at 98, 464 S.E.2d at 740. (emphasis provided and emphasis added).
According to the petitioners, the trial judge incorrectly imposed an additional element of proof concerning liability, based upon the above language, by requiring that the petitioners prove not only that Mr. Cavender was an invitee but that Mr. Fouty proposed that Mr. Cavender would be the one to detach the meter box and the paraphernalia from the pole. In his response, however, the trial judge, rather than confirming that he added such a requirement concerning who was to detach the property from the pole, asserts that such an issue is not appropri-

ately before this Court in a prohibition proceeding.
Nevertheless, as a matter of clarification, the above language of *Cavender* does not suggest that the petitioners, in addition to proving that Mr. Cavender was an invitee, must prove as a matter of law that Mr. Fouty proposed that Mr. Cavender would be the one to detach the meter box and the paraphernalia from the pole. Rather, as the language indicates, this Court was simply observing that the question of who was to detach the property from the pole is a question of fact and that the relevancy of that fact to the outcome of the litigation is for a jury to determine.

1, *State ex rel. U.S.F. & G. v. Canady,* 194 W.Va. 431, 460 S.E.2d 677 (1995); syl. pt. 8, *State ex rel. Collins v. Bedell,* 194 W.Va. 390, 460 S.E.2d 636 (1995); syl. pt. 1, *State ex rel. Doe v. Troisi,* 194 W.Va. 28, 459 S.E.2d 139 (1995); syl. pt. 1, *State ex rel. Smith v. Maynard,* 193 W.Va. 1, 454 S.E.2d 46 (1994).

As stated above, the Foutys moved for bifurcation pursuant to Rule 42(c) of the *West Virginia Rules of Civil Procedure.* That rule provides:

> Separate trials.—The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by Article III, Section 13 of the West Virginia Constitution or as given by a statute of this State.

The petitioners assert that "there is nothing unique about this case" and that no circumstances exist concerning this litigation which do not exist in every routine personal injury action. Therefore, according to the petitioners, a single trial would promote judicial economy and convenience, and any possible prejudice to the Foutys could be avoided by cautionary instructions to the jury. On the other hand, the trial judge and the Foutys rely upon the grounds, discussed above, in support of the motion to bifurcate and further state that the trial judge's ruling was not an abuse of discretion.

■ As this Court has previously indicated, the granting of separate trials pursuant to Rule 42(c) generally rests within the discretion of the trial court. *State ex rel. State Farm Fire & Casualty v. Madden,* 192 W.Va. 155, 160, 451 S.E.2d 721, 726 (1994); syl. pt. 3, *Berry v. Nationwide Mutual Fire Insurance Co.,* 181 W.Va. 168, 381 S.E.2d 367 (1989); *Bennett v. Warner,* 179 W.Va. 742, 748, 372 S.E.2d 920, 926 (1988); *Anderson v. McDonald,* 170 W.Va. 56, 61, 289 S.E.2d 729,

735 (1982). *See also* 19 M.J. *Trial* § 5 (Michie 1991); 75 Am.Jur.2d *Trial* § 140 (1991); Lugar and Silverstein, *West Virginia Rules of Civil Procedure* 349 (Michie 1960); 9 Wright & Miller, *Federal Practice and Procedure: Civil 2d,* § 2388 (1995); Eunice A. Eichelberger, Annotation, *Propriety of Ordering Separate Trials as to Liability and Damages, Under Rule 42(b) of Federal Rules of Civil Procedure, in Actions Involving Personal Injury, Death or Property Damage,* 78 A.L.R. Fed. 890, 899 (1986); C.R. McCorkle, Annotation, *Separate Trial of Issues of Liability and Damages in Tort,* 85 A.L.R.2d 9, 14 (1962).

■ The *Bennett* case, *supra,* involved a claim by the Haneys that a title insurance company's delay in securing a right-of-way to property purchased by the Haneys constituted the intentional infliction of emotional harm. On the day of trial, the Circuit Court of Pendleton County, West Virginia, *sua sponte,* and without notice, bifurcated the issues of liability and damages under Rule 42(c). Following a jury verdict for the title insurance company upon liability, the Haneys appealed. Noting that a trial court's authority under Rule 42(c) "is not unlimited" and that bifurcation should be granted only when "clearly necessary," this Court, in *Bennett,* reversed, holding that the bifurcation was error. In particular, we indicated, in *Bennett,* that the trial court had not "adequately considered" the question of bifurcating the Haneys' action. 179 W.Va. at 748, 372 S.E.2d at 926. Importantly, syllabus point 6 of *Bennett* states:

> Parties moving for separate trials of issues pursuant to West Virginia Rule of Civil Procedure 42(c), or the court if acting *sua sponte,* must provide sufficient justification to establish for review that informed discretion could have determined that the bifurcation would promote the recognized goals of judicial economy, convenience of the parties, and the avoidance of prejudice, the overriding concern being the provision of a fair and impartial trial to all litigants.

*See also State ex rel. Appalachian Power Co. v. Ranson,* 190 W.Va. 429, 431 n. 4, 438

S.E.2d 609, 611 n. 4 (1993); syl. pt. 2, *State ex rel. Tinsman v. Hott,* 188 W.Va. 349, 424 S.E.2d 584 (1992).

In *Tinsman, supra,* the plaintiffs in a sexual harassment action brought a proceeding in this Court to prohibit the enforcement of a pretrial order which granted the defendants a separate trial under Rule 42(c) upon the issue of punitive damages. Indicating that a separate trial upon punitive damages is justified only in "extraordinary cases," 188 W.Va. at 354, 424 S.E.2d at 589, this Court, in *Tinsman,* awarded relief in prohibition and stated that the impact of evidence concerning punitive damages could be restricted through proper instructions to the jury. *See* Rule 105 of the *West Virginia Rules of Evidence.*

Moreover, in *Bowman v. Barnes,* 168 W.Va. 111, 282 S.E.2d 613 (1981), involving the deaths of an automobile driver and a passenger at a railroad crossing, the administrator of the deceased passenger brought an action against the railroad company and the administratrix of the deceased driver. The circuit court, on its own motion under Rule 42(c), ordered separate trials concerning the defendants. Nevertheless, upon appeal by the administrator of the deceased passenger from an adverse jury verdict, this Court, in *Bowman,* held that the ordering of separate trials was error. Noting, as in *Bennett,* that separate trials should not be ordered unless "clearly necessary," we stated, in *Bowman,* that it is "generally acknowledged that a single trial lessens the delay, expense and inconvenience involved in separate trials[.]" 168 W.Va. at 117, 282 S.E.2d at 617. In particular, this Court observed: "Therefore, we conclude that Rule 42(c), R.C.P., which permits separate trials of multiple defendants, must be considered in light of the general policy of our joinder rules, which are designed to promote consolidation of issues and parties in a single trial to save expense

and encourage judicial economy." 168 W.Va. at 120, 282 S.E.2d at 619.[3]

In this proceeding, a close examination of the nature of the underlying action reveals that the petitioners are correct in their assertion that no circumstances exist concerning the action which do not exist in most routine or uncomplicated personal injury actions. There are no compelling factors in the litigation to indicate that separate trials are "clearly necessary" within the context of *Bennett* and *Bowman, supra.* Rather, the action consists of an uncomplicated claim for damages for personal injuries, where the sole issue as to liability is whether Mr. Cavender was a licensee or an invitee. As suggested in *Tinsman, supra,* and by Rule 105 of the *West Virginia Rules of Evidence,* any impact of the evidence concerning the Cavenders' damages which may be prejudicial to the Foutys, can, no doubt, be restricted through cautionary instructions to the jury.

Moreover, although this Court does not suggest that a trial court's discretion to order separate trials or bifurcate issues under Rule 42(c) should be unduly restricted, we emphasize that, as our prior decisions indicate, unitary trials are generally preferable over separate trials. In addition, in ordering separate trials or bifurcating issues under Rule 42(c), the trial court "must provide sufficient justification to establish for review that informed discretion could have determined that the bifurcation would promote the recognized goals of judicial economy, convenience of the parties, and the avoidance of prejudice[.]" Syl. pt. 6, *Bennett, supra.* Here, the trial judge essentially determined that, if the Foutys prevail upon the issue of liability, no witnesses concerning damages would be needed. Such a determination lacks the particularity contemplated in *Bennett* for relief under Rule 42(c).

Upon all of the above, therefore, this Court is of the opinion that the July 12, 1992, ruling

---

3. The following language found in 88 C.J.S. *Trial* § 9 (1955), is worth noting:

It is the policy of the law to limit the number of trials as far as possible, and separate trials are granted only in exceptional cases. Even under a statute permitting trials of separate issues, neither party has an absolute right to have a separate trial of an issue involved. The trial of all issues together is especially appropriate in an action at law wherein the issues are not complicated, such as in a replevin action, or the usual negligence case, or where the issues are basically the same.

of the Circuit Court of Roane County was in contravention of law and, thus, constituted an abuse of discretion. Accordingly, the relief sought by the petitioners is awarded, and the trial judge is prohibited in the underlying action from ordering separate trials upon the issues of liability and damages.

Writ granted.

RECHT, Judge, sitting by temporary assignment.

CLECKLEY, Justice, concurs.

CLECKLEY, Justice, concurring:

This case raises the age-old question regarding the scope and breadth of the trial court's discretion in bifurcation cases under Rule 42(b) of the West Virginia Rules of Civil Procedure. In the ordinary bifurcation case, I would dissent from the majority's opinion.[1] I do not believe that a reversal by an appellate court in the area of trial management should be lightly undertaken. Proper respect for the trial court rulings and judgment in this area is not only better from an institutional standpoint, but it also makes good common sense to leave intact the judgment of those men and women at the circuit court level who are best suited to make the call. The decision to separate the trial of liability from damages, however, is not merely a matter of trial management, it involves a decision that could very well impact and influence the outcome of the trial. In these limited instances, the reasoning of the circuit court must more carefully be reviewed.

Undoubtedly, it is well settled that the trial judge has broad discretion in ruling on pre-trial management matters, and we review the circuit court's ruling of a bifurcation motion only for abuse of its considerable discretion. *See Intercity Realty Co. v. Gibson,* 154 W.Va. 369, 377, 175 S.E.2d 452, 456–57 (1970). Our limited authority to correct the circuit court is familiar: only where the lower court's order was plainly wrong and resulted (or, in this case could result) in substantial prejudice to the aggrieved party should we, as an appellate court, interfere. Our recent cases have made it clear that the decision to bifurcate *vel non* is a matter to be decided on a case-by-case basis, and must be subject to an informed discretion of the trial judge in each instance. *See Barlow v. Hester Industries, Inc.,* 198 W.Va. 118, 479 S.E.2d 628 (1996) ("The discretion to rule on a Rule 42(b) motion, however, has limits and should be exercised only after an examination of the individual case") (Op. pg. 127, 479 S.E.2d 637). Thus, the decision to bifurcate must be made only after the trial court, in the exercise of its discretion, weighs the various considerations of convenience, prejudice to the parties, expedition, and economy of resources.

The subject of bifurcation in a civil case involving the separation of liability from damages has generated a heated controversy among commentators and the legal profession. To be sure, there are two schools of thought on this subject. First, those who favor liberal bifurcation emphasize "the time saving,[2] and also suggest that in theory there should be no difference in the eventual outcome of the case." *Lis v. Robert Packer Hospital,* 579 F.2d 819, 824 (3d Cir.1978), *cert. denied,* 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 346 (1978). This argument is

---

1. For the same reasons I stated in *State ex rel. Allen v. Bedell,* 193 W.Va. 32, 454 S.E.2d 77 (1995), (Cleckley, J., concurring), I believe that a writ of prohibition is inappropriate in this case. If members of the Bar believe that more access to this Court is necessary in interlocutory matters, they should take their argument to the Halls of the West Virginia Legislature and request new legislation on the subject.

2. An earlier statistical study by Professor Hans Zeisel and an associate suggested that routine bifurcation reduced the average time spent in trial about twenty percent. Zeisel & Callhan, *Split Trials and Time Savings: A Statistical Anal-*ysis, 76 Harv. L.Rev. 166 (1963). As a basis for their conclusion, they looked at two factors: (1) if the case is bifurcated and the jury finds no liability, there is no need to present evidence relating to damages (of course, in a unitary trial the evidence of every issue must be presented before the jury commences with its deliberation); and (2) in cases where liability is initially determined in favor of the plaintiff, the defendants show an increased willingness to settle the case; once again avoiding the necessity of introducing time-consuming evidence relating to damages.

squarely rejected by an equally impressive group of scholars who advance that in personal injury cases the separation may very well affect the outcome.[3] *See* 9 Wright & Miller, *Federal Practice and Procedure* § 2390, at 508 (1995) ("But when it is seen that the split trial reduces by more than half the cases in which personal injury plaintiffs are successful, it is apparent that bifurcation makes a substantial change in the nature of the jury trial itself"). Additionally, it is contended that bifurcation obviates the expense of preparing for trial until liability has been found, and that bifurcation may act as a stimulus to settle cases after the finding of liability. *Stevenson v. General Motors Corp.,* 513 Pa. 411, 416, 521 A.2d 413, 415 (1987).

It would exceed the scope and purpose of this concurring opinion to take sides in this debate. The point that I underscore is that the decision to separate the trial of liability from damages is important, affecting more than convenience; "it makes a substantial change in the nature of the jury trial itself." Wright & Miller. It is for this reason that the bifurcation decision goes beyond the pale of mere trial management. This significance was recognized by the Federal Advisory Committee on Civil Rules, while saying that "bifurcation should be encouraged where experience has demonstrated its worth," the Committee cautioned also that separation "is not to be routinely ordered." Advisory Committee's Note to the 1966 Amendment of Rule 42(b), 39 F.R.D. 113. We adhere to that position. We believe as a policy matter that the admonition of the Advisory Committee is sound and that separation of this kind should be sparingly used.

Similarly, American courts have always expressed a preference for unitary trials in both criminal and civil cases. As the United States Supreme Court suggested in *Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993) (citing *Richardson v. Marsh,* 481 U.S. 200, 209, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987)), unitary trials promote efficiency and serve the interest of justice by avoiding the scandal and inequity of inconsistency. Indeed, it is ordinary and usual to expect no separation of the issues of damages and liability, and separation of these issues for trial purposes not only runs counter to the intention of the federal rule drafters, but is at odds with our practice. While the trial court retains discretion to make the bifurcation call, it is not his or her prerogative to influence the outcome of personal injury litigation without sufficient justification. Therefore, the trial court must support the decision to bifurcate with an explication demonstrating its exercise of an informed discretion in the circumstances of the particular case.

In determining whether to bifurcate a trial, circuit courts should be mindful of the danger that evidence relevant to both issues may be offered at only one-half of the trial. This hazard necessitates the determination that the issues of liability and damages be totally independent of each other prior to permitting bifurcation. This issue was aptly addressed in *Brown v. General Motors Corp.,* 67 Wash.2d 278, 282, 407 P.2d 461, 464 (1965), where it was said that:

> "[Bifurcation] should be carefully and cautiously applied and be utilized only in a case and at a juncture where informed judgment impels the court to conclude that application of the rule will manifestly promote convenience and/or actually avoid prejudice. Piecemeal litigation is not to be encouraged. Particularly is this so in the field of personal injury litigation, where

---

3. In *Lis v. Robert Packer Hospital,* 579 F.2d at 824 n. 7, it is stated that:

> "It can reasonably be suspected that the degree of negligence, the contributory negligence of the plaintiff, and other conduct of the parties are presently reflected, with many juries, in the finding of damages as well as the finding of liability. To a purist it probably would seem desirable to put an end to this, but

> it may be argued that this lends a beneficial flexibility to the strict rules of liability and contributory negligence. At least it should be recognized that separate trials of liability and damages differ from a single trial in more than form. Note, *Separate Trial of a Claim or Issue in Modern Pleading: Rule 42(b) of the Federal Rules of Civil Procedure,* 39 Minn. L.Rev. 743, 760–61 (1955)."

the issues of liability and damages are generally interwoven and the evidence bearing upon the respective issues is commingled and overlapping." (Citations omitted.)

*See also, York v. AT & T Co.*, 95 F.3d 948, 958 (10th Cir.1996) ("Such decisions must be made with regard to judicial efficiency, judicial resources, and the likelihood that a single proceeding will unduly prejudice either party or confuse the jury."); *Saxion v. Titan-C-Manufacturing, Inc.*, 86 F.3d 553, 556 (6th Cir.1996) ("A decision ordering bifurcation is dependent on the facts and circumstances of each case."); *O'Dell v. Hercules Inc.*, 904 F.2d 1194, 1202 (8th Cir.1990) ("In exercising discretion [to bifurcate] courts should consider the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion."). The court in *Kimberly-Clark Corp. v. James River Corp.*, 131 F.R.D. 607, 608–609 (N.D.Ga.1989), posted seven considerations which may be addressed in making the decision whether to bifurcate: (1) whether the issues sought to be tried separately are significantly different, (2) whether the issues are triable by jury or the court, (3) whether discovery has been directed to a single trial of all issues, (4) whether the evidence required for each issue is substantially different, (5) whether one party would gain some unfair advantage from separate trials, (6) whether a single trial of all issues would create the potential for jury bias or confusion, and (7) whether bifurcation would enhance or reduce the possibility of a pretrial settlement. Citing, *Martin v. Bell Helicopter Co.*, 85 F.R.D. 654, 658 (D.Col.1980); *Gonzalez-Marin v. The Equitable Life Assurance Society*, 845 F.2d 1140, 1145 (1st Cir.1988). In the final analysis, *Kimberly-Clark* appropriately articulated my concern that "the paramount consideration must remain a fair and impartial trial to all litigants through a balance of benefit and prejudice." *Kimberly-Clark*, 131 F.R.D. at 609, (citations omitted).

If we are ultimately persuaded by the data that strongly suggests that bifurcation can impact prejudicially to plaintiffs in the amount of verdicts, it is unequivocally clear that all "ducks" must be in a row before the trial court takes the giant step of potentially influencing the outcome of a case by allowing bifurcation. Although I will acknowledge that courts have an obligation to make certain that juries do not unfairly punish defendants with outrageous and derelict verdicts for plaintiffs, I hasten to point out that this obligation must be balanced against the right of plaintiffs to have just and adequate verdicts. In balancing these twin concerns, courts must not knowingly or negligently tilt the scale in favor of either side. Ours is the task of engaging in creative thinking that solomonizes. In being true to this task, judges must be forever vigilant to the built-in bias of bifurcation. Should a trial court fail in this regard, then it becomes the duty of this Court to correct the scales of justice. Unfortunately, the circuit court's decision and justification for bifurcation are wide of the mark.