1076

John M. CONNOLLY, Respondent v. PEOPLE'S LIFE INSURANCE COMPANY OF SOUTH CAROLINA, Appellant.

(364 S. E. (2d) 475)

Court of Appeals

*Clifford F. Gaddy, Jr.*, of *Foster, Gaddy & Foster*, Green-ville, *John Gregg McMaster* and *Henry Dargan McMaster*, of *Tompkins, McMaster & Thomas*, Columbia, *for appellant.*

*Joseph G. Wright, III*, and *Ernest C. Trammell*, of *Wright and Trammell*, Anderson, *for respondent.*

Heard Dec. 9, 1987.

Decided Jan. 4, 1988.

GOOLSBY, Judge:

This appeal involves an action based on the South Carolina Unfair Trade Practices Act. The jury found that the appellant People's Life Insurance Company of South Carolina willfully violated the act and awarded the respondent John M. Connolly $75,000 in actual damages. The trial judge trebled the damages and awarded Connolly attorney fees and costs pursuant to the act. The dispositive issue is whether People's Life's conversion of a note and mortgage given by Connolly to another constitutes a violation of the unfair trade practices act. We hold that it does not do so and reverse.

Connolly gave a note and mortgage to Key Life Insurance Company to secure a loan. Key Life was later placed in liquidation. Certain assets and liabilities, among them being Connolly's note and mortgage, were assigned to People's Life by the liquidator, the South Carolina Chief Insurance Commissioner.

A dispute soon arose between Connolly and People's Life regarding the balance owed by Connolly on the note. Connolly claimed that he no longer owed any amount on the note. He demanded the note's return and satisfaction of the mortgage. People's Life relied solely on the Insurance Com-

missioner, who has possession of Key Life's records, to determine whether Connolly owed anything on the note.

After Connolly on July 17, 1985, made what the Insurance Department determined was the final payment due on the note, the Insurance Department asked People's Life to "mark the note satisfied and cancelled and return [it] to the Insurance Department" so that it could forward the note to Connolly's attorney.

Thereafter, People's Life wrote Connolly's attorney that it understood it was not to receive any "additional money from Mr. Connolly." People's Life, however, also advised him that it "[had] not received [its] settlement from the Insurance Department" and that "[u]pon receipt, [it would] then complete processing on Mr. Connolly's mortgage."

People's Life satisfied the mortgage on October 9, 1985.

In the meantime, an attempt by Connolly to sell the mortgaged premises, a marble company, fell through when Connolly could not deliver a clear title to the property.

Connolly's complaint alleges three causes of action against People's Life: a cause of action based on an alleged violation by People's Life of Section 29-3-310 and 29-3-320 of the South Carolina Code of Laws (1976) because of its failure to mark the mortgage satisfied within three months after Connolly's final payment on the note; a cause of action based on People's Life's alleged conversion of the note and mortgage that occurred when it refused Connolly's demand to return the note and mortgage and to have the mortgage marked satisfied and when it used the note and mortgage as leverage in negotiating a settlement with the Department of Insurance; and a cause of action based on an alleged violation of the unfair trade practices act because of People's Life's unfair and deceptive acts in converting Connolly's note and mortgage.

The jury found in favor of People's Life on the first cause of action and found against it on the second and third causes of action. The jury awarded damages only on the cause of action alleging a violation of the unfair trade practices act.

At trial, People's Life made a motion for directed verdict at the close of Connolly's case and at the close of all the evidence on the cause of action alleging a violation of the unfair trade practices act. Although there is a question

concerning whether People's Life met the specificity requirement of Rule 50(a) of the South Carolina Rules of Civil Procedure in making its motions for directed verdict, we are satisfied that, when both motions are considered together and are viewed against the backdrop formed by the complaint's allegations and the arguments made by trial counsel either in support of or in opposition to the motions, the trial judge understood that a basis therefor was the People's Life's conversion of the note and mortgage did not constitute a violation of the unfair trade practices act. *See* 5A J. MOORE AND J. LUCAS, MOORE'S FEDERAL PRACTICE § 50.04 at 50-41—50-42 (2d ed. 1987) (the requirement that a motion for directed verdict state the specific grounds therefor is not a technical one and is satisfied if the court understands the grounds for the motion); 9C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2533 at 580-81 (1971) ("A motion for directed verdict at the close of the plaintiff's case and a similar motion at the close of all of the evidence can be considered together in determining whether specific grounds were made sufficiently clear.").

We are satisfied also that the exception that raises this issue on appeal, though somewhat general, is likewise sufficient. *See Sandel v. Cousins*, 266 S. C. 19, 221 S. E. (2d) 111 (1975) (in which the Supreme Court held sufficient an exception from which it was impossible to determine the points of law or fact the appellant desired the Court to review where the appeal was meritorious, it was readily apparent from the exception and the Statement of the Case that the sole issue presented for review was the sufficiency of the evidence to submit the question of damages to the jury and the briefs further revealed that there was no proof to establish the exact amount of damages and the appellant relied on the right to recover nominal damages). Indeed, Connolly fully meets in his brief People's Life's contention that the trial court erred in allowing the jury to base a finding of an unfair or deceptive act under the unfair trade practices act on its refusal "to cancel the mortgage in order to use it 'as leverage in attempting to secure a beneficial settlement from the Insurance Department...' ."

The unfair trade practices act renders unlawful "unfair or deceptive acts or practices in the conduct of any trade or

commerce...." S. C. Code of Laws § 39-5-20(a) (1976). The terms "trade" and "commerce" are defined by the unfair trade practices act to "include the advertising, offering for sale, sale or distribution of any services and any property, ... and any other article, commodity or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this State." *Id.* § 39-5-10(b). Pursuant to the unfair trade practices act, "[a]ny person who suffers any ascertainable loss of money or property ... as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by [Section] 39-5-20 may bring an action individually ... to recover actual damages." *Id.* § 39-5-140.

We recognize that the unfair trade practices act ■ should be given a liberal construction. *See Paces Ferry Dodge, Inc. v. Thomas,* 174 Ga. App. 642, 331 S. E. (2d) 4 (1985) (interpreting the Georgia Fair Business Practice Act OCGA §§ 10-1-391 *et seq.*). Still, the unfair trade practices act should not, under the guise of liberal construction, be held to apply where it is clearly not applicable.

Here, the conversion of the note and mortgage by ■ People's Life, an assignee, was unconnected with the "advertising, offering for sale, sale or distribution of any services and any property, ... and any other article, commodity or thing of value...." S. C. Code of Laws § 39-5-10(b) (1976). Being unconnected with a transaction constituting either trade or commerce, People's Life's conversion of Connolly's note and mortgage, while admittedly unfair, is simply not the kind of "unfair or deceptive method, act or practice declared unlawful by [Section] 39-5-20" and we so hold. *Id.* § 39-5-140 (1976); *see Gautreau v. Southern Milk Sales, Inc.,* 509 So. (2d) 495 (La. Ct. App. (3rd) Cir. 1987) (construing an earlier case to hold that certain actions constituting a tortious conversion did not amount to an unfair trade practice and holding that the recurrence of the tortious conversion also did not constitute an unfair trade practice under statutes almost identical to Sections 39-5-20(a) and 39-5-140); *cf. Key Company, Inc. v. Fameco Distributors, Inc.,* 292 S. C. 524, 357 S. E. (2d) 476 (Ct. App. 1987) (holding that a mere breach of contract does

not constitute an unfair trade practice); *State ex rel. Edminsten v. J. C. Penney Co., Inc.*, 292 N. C. 311, 316-18, 233 S. E. (2d) 895, 899-900 (1977) (wherein the North Carolina Supreme Court concluded that language then found in North Carolina's Monopolies and Trusts Act, N.C.G.S. § 75.1.1(a) (1969) limiting the statute's application to "acts or practices in the conduct of trade or commerce" served to confine the statute's scope to matters "involved in the bargain, sale, barter, exchange or traffic" of goods or services or to "practices affecting sales" and not to "practices unrelated to the sale" of such good or services); *CF Industries, Inc. v. Transcontinental Gas Pipe Line Corp.*, 448 F. Supp. 475 (W.D.N.C. 1978) (construing *State ex rel. Edminstein v. J. C. Penney Co., Inc., supra*). The trial court, therefore, erred in failing to grant motions by People's Life for directed verdict and for judgment notwithstanding the verdict.

We need not reach the other questions presented by People's Life in its appeal.

Reversed.

SANDERS, C. J., and GARDNER, J., concur.