Thomas B. McTEER, Jr., Plaintiff,

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE, Defendant.**

Thomas B. McTEER, Jr., Plaintiff,

v.

**STATE FARM LIFE INSURANCE COMPANY, Defendant.**

Civ. A. Nos. 3:88–2167–16, 3:88–2168–16.

United States District Court,
D. South Carolina,
Columbia Division.

Feb. 3, 1989.

Michael H. Quinn, Quinn, Brown, Arndt & Manning, Columbia, S.C., for plaintiff.

Paul A. Dominick, Nexsen Pruet Jacobs & Pollard, Columbia, S.C., for defendants.

## ORDER

HENDERSON, District Judge.

This matter is before the Court on the motion of each defendant in each action for partial summary judgment. The actions have been consolidated pursuant to Rule 42(a), F.R.C.P. In each action the plaintiff alleges three claims, namely, breach of contract, violation of the South Carolina Unfair Trade Practices Act ("UTPA"), §§ 39–5–10 *et seq.*, Code of Laws of South Carolina, 1976, as amended, and conversion. The defendants' motions challenge the UTPA and conversion causes of action, asserting that they are entitled to judgment as a matter of law on these two claims. For the reasons set forth below, the motions are granted in part and denied in part.

## I.

On summary judgment the facts must be taken in the light most favorable to the non-movant, here, plaintiff Thomas B. McTeer, Jr. ("McTeer"). *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 996, 8 L.Ed.2d 176 (1962). So taken, the facts reveal that McTeer purchased the Dutch Square Shopping Center ("Dutch Square") in Richland County, South Carolina, in March 1983. In making the purchase, McTeer assumed the payment obligations on two promissory notes owned by defendant Provident Life and Accident Insurance Company ("Provident") and two promissory notes owned by defendant State Farm Life Insurance Company ("State Farm"). The four notes were of equal priority and were secured by first mortgages on Dutch Square. McTeer also gave the sellers, Dutch Square Associates and Germantown Associates, his two promissory notes secured by two second mortgages on the purchased property. South Carolina National Bank ("SCN") acted as the defendants' mortgage banker and correspondent with respect to the property

and McTeer made all payments and directed all communications to SCN in connection with the defendants' four notes and mortgages. McTeer then sold Dutch Square to Balcor Realty Investors—83 ("Balcor"), taking as part of the purchase price Balcor's promissory note secured by a third mortgage on Dutch Square.

In October 1987 McTeer and Balcor agreed to Balcor's prepayment of its note and mortgage to McTeer subject to McTeer's prepayment of his notes and mortgages to Provident and State Farm, respectively. By letter dated October 19, 1987, McTeer notified both defendants via SCN that he wanted to prepay the notes as of October 30, 1987. Under the terms of the four notes and mortgages, the defendants were entitled to sixty days' prior written notice of prepayment and were entitled to assess a prepayment penalty. The defendants agreed to waive the sixty days' notice and to accept McTeer's prepayment of the four notes and arranged through SCN the prepayment penalty McTeer was to pay. McTeer agreed to the penalty amount. Neither SCN nor the defendants discussed any other charges with McTeer at that time.

Based on these negotiations, McTeer notified Balcor that he agreed to accept Balcor's prepayment on October 30, 1987, and Balcor agreed to wire the funds to McTeer on that date. McTeer intended to use these funds to prepay the defendants' notes. In the late afternoon of October 29, SCN notified McTeer of the pay-off amount, which amount did not conform to McTeer's figures. Nevertheless, the next day McTeer paid SCN the amount according to SCN's calculations with the understanding that SCN was to furnish McTeer a breakdown of the figures, that he did not agree with the figures and that he paid the amount subject to confirmation.

Subsequently McTeer learned that the defendants charged him eighty-three days' interest, sixty days of which was charged for their waiver of the notice requirement.[1] McTeer made demand on the defendants for the return of a portion of the interest paid, the defendants refused and McTeer then filed these actions.

## II.

The defendants move for summary judgment on the UTPA cause of action on three grounds: (1) the parties' transaction does not come within the UTPA's definition of trade or commerce;[2] (2) the parties' transaction does not affect the public interest as required by *Noack Enterprises v. Country Corner Interiors, Inc.*, 290 S.C. 475, 351 S.E.2d 347 (Ct.App.1986), and (3) the defendants come within the UTPA's exemption for "[a]ctions or transactions permitted under laws administered by any regulatory body or officer acting under statutory authority of this State ... or actions or transactions permitted by any other South Carolina State law." Section 39–5–40(a), Code of Laws of South Carolina, 1976, as amended.

### A. *Trade or commerce under UTPA.*

The defendants assert that their action in charging interest for McTeer's prepayment does not constitute trade or commerce under the UTPA because they "merely calculated the payoff amount on a mortgage loan which had been used by the plaintiff for the construction and maintenance of a shopping center." Memo. in Support of Def. Motion for Partial Summary Judg-

---

1. According to the defendants, they charged sixty days' interest beginning on October 23, 1987, the date McTeer notified them of his wish to prepay. In addition, they charged twenty-three days' interest for interest already accrued as of October 23, that is, interest from October 1 to October 23, 1987. Affid. Thomas B. McTeer, Jr., Exhs. D–3 and D–6. Apparently, McTeer seeks the return of only fifty-three days' interest although a finding to that effect is not necessary to resolve these motions and the Court makes no such finding.

2. The UTPA contains the following definition:
   (b) "Trade" and "commerce" shall include the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this State.
   Section 39–5–10(b), Code of Laws of South Carolina, 1976, as amended.

ment 3. They argued alternatively at the motions hearing that, even if the transaction constitutes a sale of property, it is not a consumer transaction. The Court concludes the defendants are wrong in both assertions.

■ The Court first notes that the UTPA "should be given a liberal construction." *Connolly v. People's Life Insurance Co.*, 294 S.C. 355, 359, 364 S.E.2d 475, 477 (Ct.App.1988). Using that construction, the Court concludes that the parties' transaction fits the UTPA's definition of trade or commerce because it involves the sale of property, that is, the defendants sold, by means of four loans secured by four mortgages on the purchased property, to the original owners of Dutch Square, McTeer's predecessors in interest, the present use of money for a promise to repay in the future, a sale which McTeer completed by repaying the defendants' loans according to the latters' calculations. *See Villegas v. Transamerica Financial Services*, 147 Ariz. 100, 708 P.2d 781, 783 (Ariz.App.1985).

The defendants' reliance on *Connolly, supra*, for its holding that a conversion does not constitute a UTPA violation is misplaced here since McTeer's UTPA allegations are directed to the defendants' charging of interest not to the defendants' alleged conversion of that interest once he paid it.

■ Furthermore, the UTPA does not expressly apply only to consumer transactions. Judicial interpretation of the UTPA, by requiring that a transaction must affect the public interest to be cognizable, may have given a de facto consumer orientation to it. *See, e.g., Noack, supra; Glaesner v. Beck/Arnley Corp.*, 790 F.2d 384, 390 (4th Cir.1986). But the South Carolina UTPA also includes transactions between businesses or commercial entities such as the parties to these actions. That this interpretation of South Carolina's UTPA is correct is necessarily implied by South Carolina decisions involving only non-consumer parties such as *Noack, supra*, and *Key Co., Inc. v. Fameco Distributors*, 292 S.C. 524, 357 S.E.2d 476 (Ct.App.1987). If a dispute

between non-competing business or commercial entities were not within the UTPA's scope, the court would never have reached the issue of required involvement of the public interest in *Noack* or the issue of the insufficiency of a mere breach of contract in *Fameco*. Consequently, the fact that the parties' transaction is not a consumer transaction does not prevent it from giving rise to a UTPA claim.

### B. *Public interest.*

■ defendants next assert that the parties' transaction does not affect the public interest. They contend, relying on *Noack* and *Fameco*, that McTeer's claim in essence is for breach of contract, an alleged private wrong between two private parties, and therefore not within UTPA's scope. The Court disagrees.

*Noack* involved the plaintiff's purchase of an interior decorating business from the defendants. The plaintiff charged the defendants with several deceptive and otherwise unfair acts in connection with the sale. The court held that the plaintiff failed to state a cause of action under the UTPA because it failed to meet the "affecting the people of this State" requirement of section 39–5–10(b). The court explained that to satisfy that requirement, a plaintiff must show that the acts alleged "adversely affect the public." 290 S.C. at 480, 351 S.E. 2d at 350. The court further stated that unfair or deceptive acts or practices have an impact on the public interest if they "have the potential for repetition." 290 S.C. at 480, 351 S.E.2d at 351. In *Fameco* the court reversed a verdict based on a UTPA violation arising from a contract between an owner of coin-operated video game machines and a nightclub owner. It held that the defendant's acts, while they constituted an intentional or deliberate breach of contract, neither directly or indirectly affected the rights of anyone but the contracting parties. 292 S.C. at 526, 357 S.E.2d at 478. Accordingly, the court concluded that the defendant's action "in breach of its contract ..., without more,

does not constitute a violation of the UTPA." *Id.*[3]

Here, however, there is evidence sufficient to defeat the defendants' motion that their alleged unfair or deceptive acts have the potential for repetition. First, McTeer so alleges. Compl. ¶ 27. More important, as the defendants' answers to the Court's interrogatories manifest, their challenged acts appear to be their practice in cases of loan prepayment. Def. Ans. to Interr. pursuant to Rule 16(b) Nos. 2 and 5. Accordingly, the Court concludes that the parties' transaction is more than a mere breach of contract and has the potential for repetition thereby affecting the public interest.

C. *Section 39–5–40(a) exemption.*

█ The defendants' third ground for claiming they are entitled to summary judgment on McTeer's UTPA claim is that, as insurance companies, they come within the following exemption of section 39–5–40(a);

Nothing in this article shall apply to:

(a) Actions or transactions permitted under laws administered by any regulatory body or officer acting under statutory authority of this State or the United States or actions or transactions permitted by any other South Carolina State law.

They argue that, because section 38–11–40(*l*) and (q), Code of Laws of South Carolina, 1976, as amended,[4] authorizes South Carolina insurance companies to invest in mortgage loans, the parties' transaction is "permitted" under a law administered by a regulatory body, namely, the Insurance Commission of South Carolina, and therefore falls outside the scope of the UTPA as a matter of law. Again the Court disagrees.

Section 39–5–40(a) of the Code was first interpreted in *State ex rel. McLeod v. Rhoades,* 275 S.C. 104, 267 S.E.2d 539 (1980). There, the South Carolina Supreme Court held that a UTPA cause of action does not lie for alleged unfair and deceptive acts in connection with securities transactions because those acts are subject to regulation by both the Securities and Exchange Commission and the South Carolina Unfair Securities Act and thus fall within the section 39–5–40(a) exemption. In so holding, the court focused on "each alleged action" and "the transactions complained of." 275 S.C. at 106–07, 267 S.E.2d at 541. In other words, it considered not whether the securities business in general is regulated but whether the challenged acts themselves are regulated. It endorsed the test enunciated by the Supreme Court of Rhode Island as "the appropriate test to govern the applicability of our exemption statute to securities transactions." *Id.* Quoting from *State v. Piedmont Funding Corp.,* 119 R.I. 695, 382 A.2d 819 (1978), the court set forth the procedure to be followed:

"When the party claiming exemption from the Act shows that the general activity in question is regulated by a 'regulatory body or officer' within the meaning of § 6–13.1–4, the opposing party, in this case the state of Rhode Island, then has the burden of showing that the specific acts at issue are not covered by the exemption. . . ."

*Id.*

Applying that procedure to these actions, the Court concludes that the defendants have shown that the business of insurance is regulated by the Insurance Commission of South Carolina under Title 38 of the South Carolina Code. They have further shown that section 38–5–1040 (now section

---

**3.** On rehearing, the court applied *Noack's* "potential of repetition" test and concluded that, "as alleged and as tried, [the claim] involved nothing more than a breach of contract that affected no one but the parties to the contract." *Id.*

**4.** Title 38 of the South Carolina Code was totally reorganized effective January 1, 1988. The predecessor statute to section 38–11–40, section 38–5–1040, provided essentially the same authority in subsections (m) and (r) to invest in

"evidences of debts secured by first mortgages" and in "loans secured by pledge of collateral," respectively. The parties seem to agree that the predecessor statutes govern these actions; without concluding that they do, the Court uses the predecessor statutes in deciding these motions and notes that the application of either the predecessor or the current provisions effects the same result as set forth *infra.*

38–11–40) permits insurance companies to invest in mortgage loans. They have not shown, however, that the mere authorization to engage in that activity amounts to regulation of that activity. Section 38–5–1040 (now section 38–11–40) does no more than require that each insurer's total investments (which may include investments in mortgage loans) must be sufficient to cover policyholder obligations and minimum capital, or guaranty fund, and surplus. The most that can be said to be "regulated" about investments in mortgage loans is that their amount may be counted toward a specified minimum. This, the Court concludes, does not amount to regulation sufficient to trigger the UTPA exemption.[5]

Even assuming that the defendants have made the requisite showing under *Rhoades,* McTeer can successfully show that the "specific acts at issue" are not covered by the exemption. The specific act at issue is the defendants' assessment of additional interest due to McTeer's prepayment of the four loans. Nowhere in Title 38 is this act even remotely regulated either expressly or by implication.[6] The specific act at issue, then, does not come within section 39–5–40(a) and the defendants' summary judgment motion on McTeer's UTPA claim is denied.

### III.

The defendants also move for summary judgment on McTeer's conversion cause of action. They claim that McTeer voluntarily paid them a disputed amount and therefore no unlawful taking or retention of his property occurred. They further contend that their claim to the additional interest McTeer paid arises from a colorable contract right and therefore a conversion claim cannot lie as a matter of law. The Court agrees.

■ First, conversion can result from either a wrongful taking or a wrongful detention of another's property. *Kirby v. Horne Motor Co.,* 295 S.C. 7, 11, 366 S.E.2d 259, 261 (Ct.App.1988). McTeer concedes that "the defendants came into possession of the interest money lawfully" although he maintains that he paid the money under protest. Pl. Response to Def. Motion for Partial Summary Judgment (Conversion) 7–8. The conversion occurred, according to McTeer, when the defendants refused to return the disputed amount after he demanded its return. He relies on *Save Charleston Foundation v. Murray,* 286 S.C. 170, 333 S.E.2d 60 (Ct.App.1985), which held that the obligee's retention of a satisfied promissory note after the obligor demands return states a claim for conversion. The fact that the defendants may have obtained the interest lawfully, then, does not necessarily entitle them to summary judgment here because McTeer claims they wrongfully kept it.

■ The defendants further submit, however, that they hold the interest under a contract right and, according to *Owens v. Zippy Mart of South Carolina, Inc.,* 268 S.C. 383, 234 S.E.2d 217 (1977), conversion does not lie when property is obtained and held under a contract right. *Owens* in-

5. The defendants do not rely solely on section 38–5–1040 (now 38–11–40) but their reliance on other provisions of Title 38 is even more unavailing. Section 38–9–110 (now 38–55–70) merely declares that an insurer's offering of a secured loan is not a discriminatory or otherwise unlawful act. Sections 38–55–10 to 410 (now 38–57–10 to 320) regulate trade practices including unfair or deceptive acts "in the business of insurance." Section 38–55–10 (now 38–57–10). The defendants additionally assert that section 38–55–240 (now 38–57–200) originally authorized the Chief Insurance Commissioner of South Carolina to investigate and hear complaints of all deceptive or unfair acts as defined in this "Code" and that he could thereby investigate and hear a complaint fitting under the UTPA. New section 38–57–200 substitutes "title" for "Code." Construing section 38–55–240 within Title 38 as a whole, the Court concludes that notwithstanding the use of the word "Code," the intent of Title 38 is to regulate the business of insurance and not all deceptive or unfair acts or trade practices in whatever profession or industry they might occur.

6. *Trident Neuro–Imaging Laboratory v. Blue Cross,* 568 F.Supp. 1474 (D.S.C.1983), is easily distinguishable because there the specific activity challenged, the defendant's exclusion of coverage on physician-owned CAT scans, was approved by the State Insurance Commission. 568 F.Supp. at 1483.

volved an employer-employee dispute over money owed and the court held that under the parties' contract the employee "had only a disputed claim for her wages, not an immediate right to payment." 268 S.C. at 386, 234 S.E.2d at 218. The court distinguished *Owens v. Andrews Bank & Trust Co.*, 265 S.C. 490, 220 S.E.2d 116 (1975), where it had held that a depositor could maintain a claim against her bank for conversion of her Christmas Club Account. The court characterized the conduct in the earlier *Owens* as "more onerous" than a mere breach of contract because of the bank's attempt to coerce the depositor's husband to satisfy an unrelated debt by withholding payment to the depositor. 268 S.C. at 385, 234 S.E.2d at 218. The facts before the Court here more closely resemble those in the later *Owens*, that is, McTeer has a disputed claim to the interest he paid under protest, not an immediate right to payment. McTeer has not established that the defendants have engaged in onerous conduct of the sort that would transform their relationship into something more than that of debtor and creditors so as to support a conversion claim. *Id.* McTeer, having thus failed to establish an element essential to his conversion cause of action, has failed to defeat the defendants' entitlement to judgment as a matter of law on this claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## CONCLUSION

For the reasons set forth above, the defendants' summary judgment motion as to McTeer's UTPA claim (second cause of action) is denied; their summary judgment motion as to McTeer's conversion claim (first cause of action) is granted.

IT IS SO ORDERED.