2437

R. Michael CRARY and Carl M. Durham, Appellants v. Seyed Rassool DJEBELLI and Southern National Bank of South Carolina, Respondents. SOUTHERN NATIONAL BANK OF SOUTH CAROLINA, Respondent v. Seyed Rassool DJEBELLI, a/k/a S.R. Djebelli, R. Michael Crary, Carl M. Durham and C & A Mortgage Services, of whom R. Michael Crary, Carl M. Durham and C & A Mortgage Services are, . . . Appellants.

(467 S.E. (2d) 128)

Court of Appeals

*Michael N. Duncan,* of *Whiteside-Smith Law Firm,* Spartanburg, *for appellants.*

*William G. Rhoden,* Gaffney; and *Steven B. Licata,* Columbia; *for respondents.*

Heard Dec. 6, 1995.

Decided Dec. 28, 1995; Reh. Den. Feb. 22, 1996.

GOOLSBY, Judge:

R. Michael Crary, Carl M. Durham, and C & A Mortgage Services appeal an order by the master-in-equity. Among other things, the master awarded Seyed Rassool Djebelli judgment against Crary and Durham under the South Carolina Unfair Trade Practices Act (UTPA), S.C. Code Ann. §§ 39-5-10, *et seq.* (1976 & Supp. 1994), finding the appellants engaged in an unfair and deceptive trade practice that affected the public interest because the practice had the potential for repetition; he set aside an agreement between Djebelli and Crary, Durham, and C & A on the grounds of unconscionability and insufficiency of consideration; and he found the Southern National Bank of South Carolina violated 15 U.S.C.A. § 1635 (1982 & Supp. 1995) of the Federal Truth in Lending Act (FTLA) because it failed to give Djebelli a notice of the right of rescission when making him a loan. We affirm in part and reverse in part.

Djebelli owned an undivided one-half interest in certain real

property in Spartanburg County. His brother and sister-in-law[1] owned the other one-half interest. The value of the property, which included a house, lay between $300,000 and $425,000. Djebelli sought to purchase the other one-half interest from his brother and sister-in-law for $100,000, but he could not quality for conventional financing because of his low income.

Djebelli contacted Sharon Davis of C & A to secure assistance in obtaining financing. She determined additional investors were needed despite the fact Djebelli and his brother and sister-in-law owned the property free and clear of any debt or liens.

Davis then contacted Crary, C & A's owner. Crary later met with Djebelli and agreed to seek bank financing for Djebelli. Crary, however, never provided Djebelli with a written mortgage loan broker agreement.

Almost from the beginning Crary realized Djebelli would not qualify for financing unless others became involved. Crary therefore solicited Durham to become, along with himself, an additional investor in the property. Crary did this notwithstanding that he was also acting as a mortgage broker for Djebelli.

Southern National, because of Crary's efforts, loaned Djebelli $150,000.

At the closing and pursuant to an agreement between Djebelli, on the one hand, and Crary, Durham, and C & A, on the other, both Crary and Durham co-signed the note representing the loan proceeds. The loan agreement prescribed a two-year term for repayment and provided for a balloon payment at the end of the term for the balance due. The loan agreement also required the property to serve as collateral, with the bank receiving a first mortgage on the property. Djebelli deeded a one-half interest in the property to Crary and Durham to protect their interests. South National retained a sufficient amount from the loan proceeds to make the monthly payments.

Djebelli learned for the first time at closing the full terms of the investment agreement. One item called for Crary and Durham to receive $10,000 and $5,000, respectively, as investor's fees and for C & A to receive $6,000 for its services.

---

[1] The record reveals Djebelli's brother and sister-in-law are in fact divorced. For simplicity, however, we refer to her as the sister-in-law.

At closing, Crary, Durham, and C & A took a second mortgage on the property to secure payment of all their fees because the loan proceeds were insufficient to pay them in full. Although the loan closed as a commercial loan, Southern National presented Djebelli, Crary, and Durham with a Residential Mortgage Loan Truth-in-Lending Disclosure Statement and a Residential Loan Application form. Djebelli never received a notice of the right of rescission.

Thereafter, Djebelli tried unsuccessfully to sell the property. Crary was also unsuccessful in obtaining long-term financing for Djebelli. Eventually the balloon payment became due and the loan went into default. Djebelli then contacted an attorney who informed him that he was entitled to a notice of the right to rescind the transaction. Djebelli made a demand on the bank for rescission on October 21, 1992.

Southern National, however, ignored Djebelli's demand and commenced an action against Djebelli, Crary, Durham and C & A to foreclose the first mortgage. Djebelli counterclaimed against Southern National, alleging fraud, civil conspiracy, violation of the FTLA, and violation of the UTPA.

Crary and Durham brought a separate action against Djebelli and Southern National for partition of the property, claiming they owned an interest therein by virtue of the September 20, 1990 deed from Djebelli. Djebelli counterclaimed against Crary and Durham, alleging fraud, lack of consideration to support the conveyance, unconscionability, civil conspiracy violation of the FTLA, and violation of the UTPA. Djebelli also cross-claimed against Southern National, alleging the invalidity of the mortgage that Crary and Durham gave to the bank.

These actions were later consolidated and referred to the master for final judgment, with any appeal being directly to the supreme court.

## I.

The appellants contend the master erred in finding Crary and Durham's conduct constituted a violation of the UTPA. Specifically, they argue Crary and Durham's actions did not affect the public interest. We agree.[2]

---

[2] Because we reverse the trial court on this ground, we do not address the appellants' other UTPA arguments.

An action for damages may be brought under the UTPA for "unfair methods of competition and unfair or deceptive acts or practices" in the conduct of trade or commerce. S.C. Code Ann. §§ 39-5-20(a) and —140(a) (1976). To be actionable under the UTPA, the unfair or deceptive acts or practices in the conduct of trade or commerce must have an impact upon the public interest. *Noack Enters. v. Country Corner Interiors of Hilton Head Island,* 290 S.C. 475, 351 S.E. (2d) 347 (Ct. App. 1986). Unfair or deceptive acts or practices in the conduct of trade or commerce have an impact upon the public interest if the acts or practices have the potential for repetition. *Id.*

Although the master found the appellants' acts had the potential for repetition, he pointed to no evidence in support of his finding. Djebelli cites us only to Crary's testimony that he and Durham had had several opportunities to enter into transactions similar to the one here. This testimony, however, is insufficient to prove a potential for repetition without proof that they also engaged in unfair or deceptive acts when they had those opportunities in the past or that they were inclined to engage in unfair or deceptive acts or practices if given the opportunity in the future. *See Eastlake Constr. Co. v. Hess,* 102 Wash. (2d) 30, 686 P. (2d) 465 (1984) (the potential for repetition must be real and substantial, as opposed to a hypothetical possibility that the defendant's act would be repeated); *Rouse v. Glascam Bldrs.,* 101 Wash. (2d) 127, 677 P. (2d) 125 (1984) (there was no potential for repetition of a condominium builder's unfair acts toward one of the condominium owners because there was no evidence that the builder had acted unfairly or deceptively toward any other owner in the development); *see generally* Stephan V. Futeral, *Public Impact: The Stumbling Block To Stating a Private Cause of Action Under the South Carolina Unfair Trade Practices Act,* S.C. Bar, South Carolina Lawyer (Vol. 7, No. 2, Sept./Oct. 1995) at 32. As we stated in *Jefferies v. Phillips,* — S.C. —, —, 451 S.E. (2d) 21, 24 (1994), "In the course of human endeavor, every action has some potential for repetition. The mere proof that the actor is still alive and engaged in the same business is not sufficient to establish this element."

We therefore reverse the trial court's holding that Crary and Durham's conduct was actionable under the UTPA.

## II.

The appellants next argue the master erred in finding the agreement that they had with Djebelli was unconscionable. We cannot address this argument, however, because an unappealed finding supports the judgment. The master held, to use his words, "in addition to the unconscionability of the contractual transaction there was an insufficiency of consideration." The master concluded the consideration was "woefully insufficient to maintain the conveyance" and on this basis held the deed conveying the property to Crary and Durham had to be set aside. Crary and Durham do not challenge this ruling on appeal; therefore, this ruling, whether it is right or wrong, is the law of the case. *See Resolution Trust Corp. v. Eagle Lake and Golf Condominiums*, 310 S.C. 473, 427 S.E. (2d) 646 (1993) (an unchallenged ruling by the trial court is the law of the case); *Buckner v. Preferred Mut. Ins. Co.*, 255 S.C. 159, 177 S.E. (2d) 544 (1970) (the trial court's dispositive finding on one ground for its decision, whether right or wrong, becomes the law of the case and requires affirmance of an appeal if the appellant fails to argue against the finding in its brief); *see also Hendrix v. Eastern Distribution, Inc.*, — S.C. —, 464 S.E. (2d) 112 (1995) (the court of appeals should not address the merits of an issue not preserved for review).

## III.

We also cannot address the merits of the appellants' argument that the master erred in holding Djebelli was entitled to a notice of the right of rescission under the FTLA. *Hendrix, supra.* This argument is not properly preserved because the appellants presented it to the master for the first time when they filed a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. A party cannot use Rule 59(e), SCRCP, to present to the trial court an issue the party could have raised prior to judgment but did not. *Hickman v. Hickman*, 301 S.C. 455, 392 S.E. (2d) 481 (1990).

Affirmed in part and reversed in part.

HOWELL, C.J., and CURETON, J., concur.