484 S.E.2d 119

**Guenter BURBACH and Karen S. Burbach, Respondents,**

v.

**INVESTORS MANAGEMENT CORPORATION INTERNATIONAL and Hoflang Industries, Appellants.**

No. 2652.

Court of Appeals of South Carolina.

Reheard Dec. 4, 1996.

Decided March 31, 1997.

---

Susan P. McWilliams, Jennifer J. Aldrich, and Elizabeth Ann L. Felder, all of Nexsen, Pruet, Jacobs & Pollard, Columbia, for appellants.

Thomas F. McDow; and Lucy L. McDow, Rock Hill, for respondents.

HEARN, Judge:

This court granted a petition for rehearing *en banc* to review our decision in *Burbach v. Investors Management Corp. International,* Op. No. 2481, (S.C.Ct.App. filed Mar. 18, 1996) (Davis Adv. Sh. No. 6 at 20). The prior opinion of this court is hereby withdrawn; we now affirm the jury verdict.

## FACTS

In January 1991, Guenter and Karen Burbach executed a one-year lease for a house owned by Hoflang Industries. The Burbachs paid a security deposit of $350 to Investors Management Corporation International (IMC), Hoflang's leasing agent.[1]

While the Burbachs lived in the house they had constant problems with its oil furnace that the landlords never satisfactorily resolved. In November 1991, the Burbachs gave IMC written notice of their intention to vacate due to the heating system's failure. They vacated the house on Thanksgiving Day, 1991.

Even though the Burbachs demanded the return of their security deposit, the landlords never returned it. The landlords assert they did not return the deposit due to their "belief that there was some damage to the rental property during the Burbachs' occupancy."

The Burbachs brought this action against the landlords, alleging causes of action for (1) failure to return their security deposit under S.C.Code Ann. § 27–40–410 (Supp.1996) of the South Carolina Residential Landlord and Tenant Act (SCRLTA); (2) failure to provide essential services under S.C.Code Ann. §§ 27–40–440 & 27–40–630 (1991) of the SCRLTA; (3) common law conversion of their security deposit; and (4) violation of the South Carolina Unfair Trade Practices Act (UTPA), S.C.Code Ann. §§ 39–5–10 to 39–5–560 (1985 & Supp.1996). The landlords counterclaimed for damages for lost rents and repairs.

During the trial, the Burbachs presented testimony from three prior tenants of the landlords: Harold Doe, Lynn Channel, and Deborah Gower. These witnesses testified about

---

1. We refer to IMC and Hoflang collectively as the landlords.

IMC's failure to return their security deposits and its attempt to charge them for repairs.[2] They also testified about court actions brought by and against IMC arising from these disputes and the outcome of these actions. The trial court admitted the testimony over the landlords' objection, finding it relevant to the Burbachs' UTPA claim, as well as to the issue of punitive damages under their conversion cause of action.

The trial judge carefully instructed the jury on the admission of this disputed evidence. He stated:

Now, in this case there has been evidence of other cases involving IMC. These are not allowed in evidence to prove that IMC or Hoflang are liable in this case. This case, the case of the Burbachs must rise or fall on its own merits. However, these matters, that is these other matters of litigation involving IMC are to be considered by you on the issue of punitive damages, if you decide that plaintiffs are entitled to punitive damages, and may also be considered by you in regard to the Unfair Trade Practices Act because one of the requirements in that is that the plaintiffs prove that the conduct that they say constituted an unfair trade practice affected the public interest.

Following these instructions, the case was submitted to the jury on fourteen special written interrogatories. The jury responded in favor of the Burbachs on all fourteen interrogatories, including the following:

Did IMC and Hoflang Industries convert the Burbachs' security deposit to their own use?

---

2. Doe and his wife lived in the same house rented by the Burbachs from 1986 to 1989. He testified to problems with the furnace similar to those experienced by the Burbachs and to IMC's attempt to retain his security deposit. In the litigation between the Does and IMC, IMC claimed the Does owed it money for a damaged baseboard, an air conditioner, for photographs IMC took of the house, and for five light bulbs. Channel rented a condo from IMC in the late 1980s. She testified when she moved out, IMC retained a portion of her security deposit, claiming she owed them for light bulbs, a heating element for the hot water heater, and for a towel rack. Gower and her family rented a house from IMC from 1989 to 1992. When they moved out, IMC kept a portion of her security deposit, claiming the Gowers left the house "in a mess." IMC charged a professional cleaning fee and also charged the Gowers for range pans and light bulbs. All three witnesses successfully litigated claims with IMC for the return of their security deposits.

If the answer to [the preceding question] is yes, are the Burbachs entitled to recover punitive damages?

Was the failure of IMC or Hoflang Industries to return the $350 security deposit an unfair or deceptive act in the conduct of trade of commerce?

Was the failure of IMC or Hoflang Industries to return the $350 security deposit either a wilful or knowing violation of the South Carolina Unfair Trade Practices Act?

The jury found for the Burbachs on all of their causes of action and awarded the Burbachs $32,000 in punitive damages for conversion. After the Burbachs elected to recover on the conversion action, the court conducted a thorough post-trial review of the punitive damages award and affirmed it.

In the original opinion issued by this court, the majority held the evidence admitted by the trial judge was not sufficiently similar to the Burbachs' claim and reversed the jury verdict. *Burbach,* Op. No. 2481, (Davis Adv. Sh. No. 6 at 23). After rehearing *en banc,* we now affirm.

### DISCUSSION

■ On appeal, the landlords assert the trial judge impermissibly admitted testimony concerning the prior tenants' claims against IMC. They argue such testimony was not relevant on the UTPA cause of action because the testimony was not similar to the Burbachs' complaints. They also argue the UTPA does not apply and that the SCRLTA provides an exclusive remedy.

The Burbachs contend the disputed evidence was relevant on three matters: (1) the effect of the landlords' behavior on the public interest; (2) whether the landlords' retention of their security deposits was wilful as defined by the UTPA; and (3) punitive damages. We agree.

■ S.C.Code Ann. § 39–5–10(b) (1985 & Supp.1996) sets forth a broad definition of "trade and commerce" to include the "sale or distribution" of any "thing of value" directly or indirectly affecting South Carolina's citizens. Leases, while created by contract, grant to the tenant the right to use and enjoy property. They clearly are a "thing of value," even under the strictest reading of the statute's plain language.

The landlords cite *Connolly v. People's Life Insurance Co.*, 294 S.C. 355, 364 S.E.2d 475 (Ct.App.1988), *rev'd on other grounds*, 299 S.C. 348, 384 S.E.2d 738 (1989), for the proposition that the UTPA does not apply to leases. The dispositive issue in *Connolly* was whether the conversion of a note and mortgage constituted a violation of the unfair trade practices act. 294 S.C. at 356, 364 S.E.2d at 476. *Connolly* did not address the applicability of the UTPA to leases.

The landlords also assert the UTPA does not apply to the breach of a private contract such as the one the Burbachs had with IMC. They argue the UTPA does not apply because the Burbachs' private relationship with IMC did not create a public interest. We disagree.

Residential leases are things of value which directly affect the citizens of this state. The fact that our legislature has regulated the landlord-tenant relationship by enacting the SCRLTA supports this conclusion. *See* S.C.Code Ann. §§ 27–40–10 to 27–40–940 (1991 & Supp.1996). While landlord-tenant relationships are frequently governed by contract, landlords have certain statutory duties, as do tenants. These duties protect the public interest in that they create a framework that governs landlord-tenant relationships regardless of the private arrangements parties have made between themselves.

Moreover, the conduct of the landlords is capable of repetition. "[U]nfair or deceptive acts or practices in the conduct of trade or commerce have an impact upon the public interest if the acts or practices have the potential for repetition." *Noack Enterprises, Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 290 S.C. 475, 480, 351 S.E.2d 347, 350–51 (Ct.App. 1986), *cert. dismissed*, 294 S.C. 235, 363 S.E.2d 688 (1987). The problems experienced by the Burbachs are not isolated events. At least several other tenants experienced similar problems. The other tenants not only complained, *but also received judgments*. At least one case involved unfair trade practices. Clearly, the landlords' behavior is capable of repetition.

In an action brought under the UTPA, a material issue to be proved is that the unfair trade practice or act affects persons other than the parties to the transaction. Indeed, this

court held in *Jefferies v. Phillips* that UTPA cases *require* specific proof of similar acts, transactions, or happenings where there is some special relation between them which would tend to prove or disprove some fact in dispute. 316 S.C. 523, 528–29, 451 S.E.2d 21, 23 (Ct.App.1994). Without evidence of the prior tenants' similar experiences, the Burbachs would not have been able to prove their UTPA claim.

The landlords argue the evidence was dissimilar because the reasons for withholding the security deposits varied from case to case. In our view, however, the factor which makes the landlords' prior conduct relevant is the withholding of tenants' security deposits for pretextual reasons. The fact that the reason asserted by IMC differed from case to case is unimportant; the similarity arises from the pretextual nature of the reason. Accordingly, we conclude the testimony from the prior tenants was admissible on the Burbachs' UTPA claim.

We believe the trial judge handled the difficult evidentiary issues presented in this case correctly, and with great care. His instructions to the jury on their consideration of this evidence and his use of special interrogatories focused the jury's attention on the Burbachs' claims rather than on the prior tenants' difficulties.[3]

■ The Burbachs argue that even if the disputed evidence was not properly admissible under the UTPA, it was admissible on the issue of punitive damages on the conversion cause of action. We agree.

---

3. To assist trial judges in determining the admissibility of prior similar conduct under UTPA claims or for punitive damage purposes, we offer the following set of factors for consideration:
   (a) the length of time between each of the past incidents, and the incident under consideration;
   (b) the degree of similarity between the facts of the previous incidences and the incident under consideration;
   (c) the degree of similarity between the conduct of the defendant in each of the incidents;
   (d) the degree of similarity between the advantage foreseeably obtained under the facts of each prior incident by the unfair conduct in each case;
   (e) the degree of similarity of harm to others in each incident; and
   (f) the number of prior incidents as compared with the relative number of prior opportunities to conduct the unfair conduct.

Under *Gamble v. Stevenson,* 305 S.C. 104, 111–12, 406 S.E.2d 350, 354 (1991), trial judges are required to conduct a post-trial review of punitive damage awards and consider the following factors: (1) defendant's degree of culpability; (2) duration of the conduct; (3) defendant's awareness or concealment; (4) existence of similar past conduct; (5) likelihood the award will deter the defendant or others from like conduct; (6) whether the award is reasonably related to the harm likely to result from such conduct; (7) defendant's ability to pay; and (8) other factors deemed appropriate.

Clearly, the disputed evidence here was relevant to the first five factors set forth in *Gamble. Id.* Without the evidence, the trial judge could not have conducted the required post-trial verdict review of punitive damages.

The landlords failed to argue any issue relative to the conversion cause of action in their brief. Instead, their brief challenges the admissibility of the disputed evidence under the UTPA. The jury, however, returned a verdict for the Burbachs on all causes of action and the Burbachs ultimately elected to recover only on the conversion claim. We hold all evidence admitted by the trial judge under the UTPA was also relevant to the *Gamble* post-trial review of the punitive damage award.

For the foregoing reasons, the verdict of the jury is

**AFFIRMED.**

HOWELL, C.J., and CURETON, CONNOR, ANDERSON, STILWELL and HOWARD, JJ., concur.

GOOLSBY, J., dissents in a separate opinion.

GOOLSBY, Judge (dissenting):

I respectfully dissent and adhere to this court's original majority opinion, an opinion I authored and one in which Judge Shaw, then the senior associate judge of this court, fully concurred. I have altered that opinion somewhat, making it a dissenting opinion. It immediately follows.

Guenter and Karen S. Burbach brought this action against their residential landlords, Investors Management Corpora-

tion International (IMC) and Hoflang Industries. The landlords appeal the jury's verdict against them.

In January, 1991, the Burbachs executed a one-year lease for a house owned by Hoflang. The Burbachs gave a security deposit of $350 to IMC, Hoflang's leasing agent.

Karen Burbach testified the Burbachs had constant problems with the house's oil furnace that neither IMC nor Hoflang resolved. In November, 1991, the Burbachs gave IMC written notice of their intention to vacate due to the heating system's failure. They vacated the house on Thanksgiving Day, 1991.

At trial the Burbachs contended IMC never returned their security deposit after proper demand. In their amended complaint, they alleged causes of action against IMC and Hoflang for (1) failure to return the security deposit under S.C.Code Ann. § 27–40–410 (1991 & Supp.1996) of the South Carolina Residential Landlord and Tenant Act (RLTA); (2) failure to provide essential services under sections 27–40–440 and 27–40–630 of the RLTA; (3) common law conversion of their security deposit; and (4) violation of the South Carolina Unfair Trade Practices Act (UTPA), S.C.Code Ann. §§ 39–5–10 through –560 (1985 & Supp.1996). The landlords counterclaimed for damages for lost rents and repairs.

During the trial, the Burbachs presented testimony from three prior tenants of the landlords. These witnesses testified about IMC's failure to return their security deposits and its attempt to charge them for repairs. They also testified about court actions brought by and against IMC arising from these disputes and the outcomes of these actions. The trial court admitted the testimony over the landlords' objection, finding it relevant to the Burbachs' UTPA claim, as well as to the issue of punitive damages under their conversion cause of action.

The jury found for the Burbachs on all of their causes of action and awarded the Burbachs $32,000 in punitive damages for the conversion of their $350. After the Burbachs elected to recover on the conversion cause of action, the trial court conducted a post-trial review of the punitive damages award and affirmed it.

The landlords contend the trial court erred in admitting testimony concerning the prior tenants' claims against IMC. They argue that evidence was not relevant on the UTPA or the conversion causes of action because the complaints of the prior tenants were dissimilar to the Burbachs' complaints. I agree.

Evidence meets the test of relevance if it "tends to establish or to make more or less probable some matter in issue upon which it directly or indirectly bears." *Crowley v. Spivey*, 285 S.C. 397, 410, 329 S.E.2d 774, 782 (Ct.App.1985). Determinations of relevance are largely within the trial court's discretion and its decision to either admit or reject evidence will not be disturbed on appeal unless there is an abuse of such discretion amounting to an error of law to the prejudice of the appellant's rights. *Merrill v. Barton*, 250 S.C. 193, 156 S.E.2d 862 (1967). Evidence of similar acts is admissible where there is some special relation between them that would tend to prove or disprove some fact in dispute. *Reed v. Clark*, 277 S.C. 310, 286 S.E.2d 384 (1982); *Oconee Roller Mills, Inc. v. Spitzer*, 300 S.C. 358, 387 S.E.2d 718 (Ct.App.1990). Evidence of similar facts, conditions, or occurrences is inadmissible if not pertinent to the issues in the case. 32A C.J.S. *Evidence* § 770, at 161 (1996). *See also Martin v. Amusements of America*, 38 N.C.App. 130, 247 S.E.2d 639, 642–43 (1978) ("[E]vidence of similar occurrences or conditions may be admitted upon a showing of 'substantial identity of circumstances and reasonable proximity in time.' ... When the circumstances or conditions depicted by such evidence are so dissimilar that the evidence offered lacks substantial probative value, there arises the danger that the jury's confusion of the issues will outweigh any benefit to be derived from admitting the evidence, and in such a case the evidence should be excluded.").

The Burbachs argue the testimony in question was relevant to prove three matters: (1) the complained-of conduct affected a public interest, as defined by the UTPA; (2) the landlords' retention of the Burbachs' security deposit was willful as defined by the UTPA in that it followed repeated judicial notice that the conduct was wrongful; and (3) the Burbachs were entitled to punitive damages. The relevance of the past incidents of IMC's withholding security deposits to all three of

these showings depends upon the conclusion that the past conduct is *similar* to the conduct complained of in the present case. *See Crary v. Djebelli,* 321 S.C. 38, 467 S.E.2d 128 (Ct.App.1995) (unfair or deceptive acts or practices in the conduct of trade or commerce have an impact upon the public interest if the acts or practices have the potential for repetition; one way to prove potential for repetition is to show *the complained-of acts* have occurred in the past), *cert. granted* (September 18, 1996); S.C.Code Ann. § 39–5–140(d) (1985) ("a willful violation occurs when the party committing the violation knew or should have known that his conduct was a violation of § 39–5–20"); *Gamble v. Stevenson,* 305 S.C. 104, 406 S.E.2d 350 (1991) (one factor to consider in whether to award punitive damages is the existence of past similar conduct on the part of the defendant); *see also State ex rel. Tinsman v. Hott,* 188 W.Va. 349, 424 S.E.2d 584 (1992) (even where pattern and practice evidence is otherwise properly admissible, such evidence is nonetheless subject to the similarity test).

Here, the circumstances surrounding IMC's past withholdings of security deposits of the former tenants were so different from the circumstances of the present case that the testimony concerning the prior withholdings was not probative on the issues in question. Specifically, the claims IMC made against its former tenants were substantially different from those it made against the Burbachs. The damages sought by IMC against witness Harold Doe included back rent, damage to a baseboard, damage to an air conditioner, and costs for taking photographs of the rental property and replacing light bulbs. Lynn Channell's lawsuit involved charges for replacing light bulbs, a heating element for the water heater, and a towel rack. At issue in IMC's dispute with Deborah Gower were a professional cleaning fee and charges for replacing range pans and light bulbs.[1] The conflicts IMC had with these prior tenants are significantly dissimilar to the conflict in the present case, which involves primarily the Burbachs' claim that IMC constructively evicted them and IMC's claim that the Burbachs failed to fulfill their lease term.

---

1. Gower was even allowed to testify that she was without heat for several weeks even though the judge in her case ruled IMC's conduct in that regard was reasonable.

The trial court's admission of the evidence of INC's prior withholdings was prejudicial to the landlords in that the jury, as evidenced by its enormous, if not shocking, punitive damages award, clearly considered IMC's past actions. Particularly prejudicial was the admission of testimony about the *outcomes* of the prior court actions. Other jurisdictions have recognized the inherent problems of such information. *Cf.* Annotation, *Propriety and Prejudicial Effect of Reference by Counsel in Civil Case to Amount of Verdict in Similar Cases,* 15 A.L.R.3d 1144, 1146 (1967) ("Most courts hold, or recognize, that it is improper for counsel in civil cases to call to the attention of the jury the amount of verdicts in similar cases.").

I would therefore hold the trial court's admission of testimony of the IMC's past withholdings amounted to an abuse of discretion that unfairly prejudiced the landlords. *See* 32A C.J.S. *Evidence* § 770, at 161–62 (1996) (evidence of prior similar occurrences "is generally inadmissible on the grounds of relevance" and even where admission of such evidence is appropriate it may be excluded where "it would . . . be unfairly prejudicial").

I would reverse and remand.