THE STATE OF SOUTH CAROLINA

THIS
 OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
 In The Court of
Appeals

 
 
 
 Mortgage Electronic Registration Systems, Inc., Respondent,
 v.
 Todd M. Suite and Suzanne Wells, Appellants.
 
 
 

Appeal From Calhoun County
 Diane S.
 Goodstein, Circuit Court Judge

Unpublished
Opinion No. 2007-UP-272
Submitted May 1,
 2007  Filed June 5, 2007

AFFIRMED

 
 
 
 Frederick K. Jones, of Greer, for
 Appellants.
 Gary H. Johnson, of Columbia, for
 Respondent.
 
 
 

PER CURIAM:    Todd M.
 Suite and Amy Suzanne Wells appeal the circuit courts order finding they
 waived their objection that Mortgage Electronic Registration Systems, Inc.
 (MERS) is not a real party in interest and granting summary judgment in favor
 of MERS on all of their counterclaims.  We affirm.[1]
FACTS
On April 25, 2001 Suite and Wells executed
 a note promising to pay the principal sum of $181,600.00 to CTX Mortgage
 Company (CTX) at an annual interest rate of 7.25%.  The same day, a mortgage
 was granted naming MERS as nominee for CTX.  The mortgage was recorded with the
 Calhoun County Clerk of Court on May 4, 2001.  Although Suite affirms his
 execution of the mortgage document, there is a factual dispute as to whether Wells
 signature is authentic. 
Beginning in December 2002, Suite and
 Wells stopped making payments on the mortgage.  In May 2003, MERS filed a
 summons and complaint seeking foreclosure on the related property.
In a pre-answer motion and in their
 answer, Suite and Wells alleged MERS was not a real party in interest in the
 case.  Suite and Wells also filed a counterclaim to MERS foreclosure action. 
 They alleged: (1) forgery relating to Wells signature on the mortgage
 document; (2) breach of contract; (3) breach of contract accompanied by a
 fraudulent act; (4) violation of the Unfair Trade Practices Act; and (5)
 violation of the Real Estate Settlement Procedures Act (RESPA).  MERS entered
 its reply to the counterclaims and the actions were joined.  
On May 19, 2005, MERS filed and served a
 motion for summary judgment, arguing the record was devoid of any evidence to
 support Suite and Wells causes of action.  After holding two separate hearings
 on the matter, the circuit court granted MERS summary judgment on all of Suite
 and Wells counterclaims and referred the foreclosure action to the
 master-in-equity.  Noting the action had been pending for nearly two and half
 years, with multiple depositions taken and numerous discovery documents
 exchanged, the circuit judge found the issue relating to MERS standing had
 never been properly brought before the court and had therefore been waived.
DISCUSSION
A.  Real Party in Interest 
Suite and Wells claim that MERS is not a
 real party in interest and that they did not waive their objection to this
 issue.  We disagree. 
Putting the waiver issue aside, it is obvious
 that MERS has standing in the case sub judice.  Quite simply, MERS is
 listed in the mortgage as the nominee of the mortgage holder.  Furthermore, Suite
 and Wells have asserted and prosecuted claims against the company and
 represented to the court that the claims were compulsory.  Even if we were to
 find the circuit court incorrectly decided Suite and Wells waived the matter,
 there has been no reversible error, as MERS is clearly an interested party.
B.  Summary Judgment as to Suite and
 Wells Counterclaims
Suite and Wells claim the circuit court
 erred in granting summary judgment for MERS in regard to their numerous
 counterclaims.  We disagree.
When reviewing the grant of summary
 judgment, an appellate court applies the same standard that governs the trial
 court under Rule 56, SCRCP: summary judgment is proper when there is no
 genuine issue as to any material fact and the moving party is entitled to
 judgment as a matter of law. Pittman v. Grand Strand Entmt, Inc., 363
 S.C. 531, 536, 611 S.E.2d 922, 925 (2005); B & B Liquors, Inc. v. O
 Neil, 361 S.C. 267, 603 S.E.2d 629 (Ct. App. 2004). In determining whether
 any triable issue of fact exists, the evidence and all inferences that can
 reasonably be drawn therefrom must be viewed in the light most favorable to the
 nonmoving party.  Medical Univ. of South Carolina v. Arnaud, 360 S.C.
 615, 602 S.E.2d 747 (2004).  If triable issues exist, those issues must go to
 the jury.  Mulherin-Howell v. Cobb, 362 S.C. 588, 608 S.E.2d 587 (Ct. App.
 2005).
The party seeking summary judgment has
 the burden of clearly establishing the absence of a genuine issue of material
 fact.  McCall v. State Farm Mut. Auto. Ins. Co., 359 S.C. 372, 597
 S.E.2d 181 (Ct. App. 2004).  Once the party moving for summary judgment meets
 the initial burden of showing an absence of evidentiary support for the opponents
 case, the opponent to the motion can not simply rest on mere allegations or
 denials contained in the pleadings, but must come forward with specific facts
 showing there is a genuine issue for trial.  SSI Med. Servs., Inc. v. Cox,
 301 S.C. 493, 392 S.E.2d 789 (1990).  
1.  Forgery 
Suite and Wells raised the issue of the
 alleged forgery as a compulsory counterclaim seeking affirmative relief, not simply
 as a defense to the foreclosure action.  The circuit court ruled there was no
 such cause of action recognized in South Carolina, and that even in the event such
 an action was recognized, the counterclaim would not survive summary judgment,
 as there was no evidence as to who forged the signature or regarding damages.  
The circuit court was correct that there
 is no such cause of action in this state.  Additionally, Suite and Wells
 offered no evidence as to the source of the alleged forgery, but simply alleged
 that MERS was the culprit.  Thus, the circuit judge properly granted MERS
 motion for summary judgment as to Suite and Wells counterclaim for the alleged
 forgery.
2.  Breach of Contract 
Included in Suite and Wells counterclaims
 was a cause of action for breach of contract, more specifically, they allege MERS
 breached their contract through improper escrow payments.
Suite and Wells admitted they made no
 payments on the note after December 2002.  The lower court ruled the evidence
 established they were in arrears on the loan prior to the occurrence of any allegedly
 improper escrow payments.  The court found that under the note, timely payments
 were a condition precedent to any obligation regarding escrow payments.  A
 condition precedent, unless excused, must exist or occur before a duty of
 immediate performance arises.  Worley v. Yarborough Ford, Inc., 317
 S.C. 206, 210, 452 S.E.2d 622, 624 (Ct. App. 1994).  As there was no evidence that
 any escrow issues occurred before Suite and Wells went into arrears on the
 note, summary judgment on the breach of contract counterclaim was proper.
3. Breach of Contract Accompanied by a
 Fraudulent Act
In order to state a claim for breach of
 contract accompanied by a fraudulent act, a plaintiff must plead facts
 establishing three elements: (1) a breach of contract; (2) fraudulent intent
 relating to the breaching of the contract and not merely to its making; and (3)
 a fraudulent act accompanying the breach.  Harper v. Ethridge, 290 S.C.
 112, 348 S.E.2d 374 (1986).
Suite and Wells failed to put forth
 evidence to support a cause of action for breach of contract against MERS.  Moreover,
 the record is devoid of any evidence that MERS acted with any fraudulent intent
 relating to any alleged breach.  When asked whether he believed MERS committed
 fraud on him, Suite responded, I dontI wouldnt say fraud per se.  I think
 that, like I said earlier, there was a lot of confusion . . . .  Clearly, the
 circuit court properly granted summary judgment as to the counterclaim for breach
 of contract accompanied by a fraudulent act.
4.  Unfair Trade Practices Act  
The South Carolina Unfair Trade
 Practices Act provides: Unfair methods of competition and unfair or deceptive
 acts or practices in the conduct of any trade or commerce are hereby declared
 unlawful.  S.C. Code Ann. § 39-5-20(a) (1985).  Any person who suffers any
 ascertainable loss of money or property, real or personal, as a result of the
 use or employment by another person of an unfair or deceptive method, act or
 practice declared unlawful by § 39-5-20 may bring an action individually . . .
 to recover actual damages.  S.C. Code Ann. § 39-5-140 (1985).  An unfair trade
 practice has been defined as a practice that is offensive to public policy or
 which is immoral, unethical, or oppressive.  Wogan v. Kunze, 366 S.C.
 583, 606, 623 S.E.2d 107, 120 (Ct. App. 2005) (citing deBondt v. Carlton
 Motorcars, Inc., 342 S.C. 254, 269, 536 S.E.2d 399, 407 (Ct. App. 2000)).
To be actionable under the act, the
 unfair or deceptive act or practice must have an impact upon the public
 interest and have the potential for repetition.  Haley Nursery Co. v.
 Forrest, 298 S.C. 520, 381 S.E.2d 906 (1989); Burbach v. Investors
 Management Corp. Intern., 326 S.C. 492, 484 S.E.2d 119 (Ct. App. 1997).  The
 potential for repetition may be shown in two ways: 1) by showing the same kind
 of actions occurred in the past, thus making it likely they will continue to
 occur absent deterrence, or 2) by showing the companys procedures create a
 potential for repetition of the unfair and deceptive acts.  Crary v.
 Djebelli, 329 S.C. 385, 388, 496 S.E.2d 21, 23 (1998) (citing Daisy
 Outdoor Advertising v. Abbott, 322 S.C. 489, 473 S.E.2d 47 (1996)).
Suite and Wells contend the mortgage
 amount was increased on two separate occasions and thus constitutes a violation
 of the UTPA.  Even if we were to assume the mortgage was increased as they
 allege and in manner offensive to public policy, immoral, unethical, or
 oppressive, Suite and Wells failed to produce any evidence that MERS engaged in
 similar acts in past or that the companys procedures created a potential for repetition. 
 Thus, summary judgment in regard to the Unfair Trade Practices Act counterclaim
 was proper.[2] 
 Suite and Wells unauthorized practice of law allegation, which is incorporated
 into their UTPA argument, was never presented before the circuit court and is
 not preserved for review.
5.  RESPA  
In their counterclaims, Suite and Wells
 alleged MERS failed to meet RESPAs requirements as to timely notice of changes
 in the holder of their mortgage.  However, it is undisputed the note at issue
 was originally held by CTX and is now held by Bank of America, and Suite admits
 he received notice of the notes change of ownership from CTX to Bank of
 America on June 25, 2001, a timeframe within RESPAs guidelines.  Thus, there was
 no evidence to create a triable issue of fact regarding Suite and Wells claim
 that MERS violated RESPA, and the circuit court did not erred in its grant of
 summary judgment on the matter.
CONCLUSION 
Accordingly, the circuit courts
 decision is
AFFIRMED.
ANDERSON, HUFF, and BEATTY, JJ., concur.

[1] We decide this
 case without oral argument pursuant to Rule 215, SCACR.
[2] The exact act
 or acts Suite and Wells contend were violations of the UTPA is not entirely clear. 
 Before the circuit court, their argument centered around RESPA and the alleged
 forgery.  However, the appeal brief seems to focus only on the alleged increase
 in the mortgage amount and unauthorized practice of law.  Regardless, Suite and
 Wells have failed to show any evidence as to the likelihood for repetition.